**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|                           |     |                              |
|---------------------------|-----|------------------------------|
| Kareem Ashe,              | )   |                              |
|                           | )   |                              |
|     Plaintiff, | )   | Civil Action No. 05CV2299 (JDB) |
|                           | )   |                              |
|   v.            | )   |                              |
|                           | )   |                              |
| Giant of Maryland, LLC,   | )   |                              |
|                           | )   |                              |
|     Defendant. | )   |                              |

**DEFENDANT GIANT'S STATEMENT OF
POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

**<u>INTRODUCTION</u>**

Defendant, Giant of Maryland, LLC ("Giant" or "the Company"), has moved for an order dismissing this action in its entirety, with prejudice, pursuant to Fed. R. Civ. P. 12 (b)(6). Giant submits this Statement of Points and Authorities in support of that motion.

In his eight count *pro se* complaint, plaintiff Kareem Ashe alleges that Giant, his former employer: discriminated against him because of his race and sex in violation of the "Equal Pay Act of 1963, as amended, and the Whistle Blower Act" (Counts One, Four, Five and Six); retaliated against him in violation of the "Equal Pay Act of 1963, as amended, and the Whistle Blower Act" (Counts Two and Three); "constructively discharged" him in violation of public policy, as articulated in the "Equal Pay Act of 1963, as amended, 42 U.S.C. Section 2000e <u>et seq.</u>; and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States" (Count Seven); and breached his "employment contract" with Giant by terminating him (Count Eight).

The Equal Pay Act claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), as the plaintiff fails to allege that Giant paid him wages at a rate less than the rate at which it pays wages to employees of the opposite sex for equal jobs requiring equal skill, effort and responsibility which are performed under similar working conditions.  Plaintiff was at all times paid in accordance to the rates established pursuant to a collective bargaining agreement that applies equally to both sexes.  In addition, the Equal Pay act has no application to claims of discrimination on the basis of race, and no application to claims of termination, harassment or retaliation.  To the extent plaintiff is attempting to allege violations of Title VII of the Civil Rights Act of 1964, as amended, his claims must be dismissed for failure to state a claim and/or failure to exhaust his administrative remedies.

The "Whistle Blower Act" claims must also be dismissed for failure to state a claim, as plaintiff does not identify what statute to which he refers, and the federal Whistleblower Protection Act applies only to employees of the United States Government.

Plaintiff's "public policy" wrongful discharge claim must be dismissed for failure to state a claim, as the D.C. Court of Appeals has clearly held that such a claim may not be predicated upon an alleged violation of statutes with their own remedial schemes.  Finally, plaintiff's breach of contract claim is completely preempted by Section 301 of the Labor-Management Relations Act, 1947 ("LMRA"), 29 U.S.C. § 185, as the "employment agreement" Giant allegedly breached is a collective bargaining agreement ("CBA") containing mandatory, final and binding grievance and arbitration provisions, and the claim must be dismissed for failure to state a claim under Section 301.

## STATEMENT OF FACTS

Defendant Giant operates a chain of retail grocery stores where its store employees are employed under collective bargaining agreements with certain unions, including United Food and Commercial Workers Union, Local 400, AFL-CIO-CLC ("Local 400" or "the Union"). Plaintiff, Kareem Ashe, was a member of the bargaining unit represented by Local 400 as his exclusive bargaining agent under the terms of a collective bargaining agreement ("CBA"). Declaration of Bart P. Plano ("Plano Decl.") ¶ 3.  Plaintiff began working for Giant on September 25, 2003 in its Largo, Maryland store, where he remained employed until his termination on June 24, 2005.  Plano Decl. ¶¶ 3-7.  All decisions concerning his employment were made in Maryland, and plaintiff never worked at any Giant store in the District of Columbia.  Plano Decl. ¶ 7.  Giant terminated Mr. Ashe for excessive absenteeism in violation of an Absentee Control Program negotiated pursuant to the CBA with Local 400.  Plano Decl. ¶ 7.

Local 400 filed a grievance on behalf of plaintiff challenging his discharge pursuant to Article 21 of the CBA.  At a grievance hearing, plaintiff stated that he did not wish to contest dismissal, and merely wanted to be paid for his accumulated, unused vacation pay.  The Union took no further action under the CBA and never requested arbitration.  Plano Decl. ¶ 8.

In three unnumbered paragraphs on page 3 of his complaint, plaintiff sets forth the sparse (and contradictory) facts he alleges supports his claims.  Plaintiff alleges that, on December 12, 2004, he received a "Disciplinary Notice" regarding an undisclosed infraction.  Compl. at p. 3. He claims that he responded in a "written complaint," dated December 13, 2004, that the Company was "violating [his] employee rights by forcing [him] a Part Time employee to work extra hours without any advance notice," and that he believed that he was "being retaliated against by Rodney Harris, Asst. Manager."  *Id.*  He alleges that on December 19, 2004, another

3

"Disciplinary Notice" was issued, stating, "On Sunday 12/19/04 Kareem was instructed 3X by management to remove his 'Doo-Rag' and follow the company policy of wearing his food safety hat." *Id.* He then alleges, in apparent contradiction, that on January 1, 2005, he received a "Disciplinary Notice" stating that he was in "Violation of Company Policy for wearing a 'Doo Rag' to work," *id.*, to which he provided a "written response" on January 2, 2005. *Id.* In that response, he alleges that he never wears a "Doo-Rag," only a "scull cap" under his Giant Food Safety Hat, to protect his hair. *Id.* Plaintiff apparently was offended by the reference to a "Doo-Rag," which he interpreted as an insensitive, racially related reference. He further alleges that he stated in his January 2, 2005 response that he felt that he was "now being retaliated against and [felt] like [his] Civil Rights have been grossly violated by Rodney Harris." *Id.*

In paragraph 13 of the complaint (Count One), plaintiff alleges that, by these actions, Giant "harassed, discriminated, and retaliated against [him] on account of his race (black), and his sex (male), during the course of his employment . . . creating a constructive and managed hostile and intolerable work environment constituting a violation of the Equal Pay Act of 1963, as amended, and the Whistle Blower Act." Compl. ¶ 13.

In paragraph 17 (Count Two), he alleges that, by these actions, Giant retaliated against him during the course of his employment "because of Ashe's allegations of discrimination, unequal pay, hostile work environment, and retaliation," in violation of "the Equal Pay Act of 1963, as amended, and the Whistle Blower Act." Compl. ¶ 17.

In paragraph 21 of the complaint (Count Three), plaintiff alleges that, by these actions, Giant retaliated against him "by constructively terminating his employment . . . because of [his] allegations of discrimination, hostile work environment, and retaliation," in violation of "the Equal Pay Act of 1963, as amended, and the Whistle Blower Act." Compl. ¶ 21. Plaintiff does

not make clear in the complaint when he was, in fact, actually terminated, constructively or otherwise.

In paragraph 25 of the complaint (Count Four), he alleges that, by these actions, Giant discriminated against him on the basis of race in the course of his employment "with respect to pay, terms, conditions, or privileges of employment," in violation of "the Equal Pay Act of 1963, as amended, and the Whistle Blower Act."  Compl. ¶ 25.

In paragraph 29 of the complaint (Count Five), he alleges that, by these actions, Giant discriminated against him on the basis of his sex in the course of his employment "with respect to pay, terms, conditions, or privileges of employment," in violation of "the Equal Pay Act of 1963, as amended, and the Whistle Blower Act."  Compl. ¶ 29.

In paragraph 33 of the complaint (Count Six), he alleges that, by these actions, Giant discriminated against him on the basis of his race in the course of his employment by "constructively" discharging him in violation of "the Equal Pay Act of 1963, as amended, and the Whistle Blower Act."  Compl. ¶ 33.

In paragraphs 37-38 of the complaint (Count Seven), plaintiff alleges that he was "constructively terminated due to the discriminatory, harassing and retaliatory actions of the agents and supervisory employees of Giant," in violation of the "public policy" articulated in the "Equal Pay Act of 1963, as amended, 42 U.S.C. Section 2000e et seq.; and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States."  Compl. ¶ 37-38.

In paragraph 42 of the complaint (Count Eight), plaintiff alleges that Giant "breached the employment contract with plaintiff Ashe due to the discriminatory, harassing and retaliatory actions of the agents and supervisory employees of Giant."  Plaintiff does not identify his employment contract with Giant, which, of course, is the CBA between Giant and Local 400.

## ARGUMENT

**I.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE EQUAL PAY ACT, THE "WHISTLE BLOWER ACT," AND TITLE VII**

In Counts One, Four, Five and Six of his complaint, plaintiff alleges that Giant "discriminated" against him because of his race and sex in violation of "the Equal Pay Act of 1963, as amended, and the Whistle Blower Act." In Counts Two and Three, he alleges that Giant "retaliated" against him in violation of "the Equal Pay Act of 1963, as amended, and the Whistle Blower Act." The factual allegations in support of these claims in the complaint are sparse. Basically, plaintiff alleges on page 3 of the complaint that, in December 2004, a supervisor instructed him to remove what he calls a scull cap, which he alleges the supervisor referred to as a "Doo-Rag," "and follow the company policy of wearing his food safety hat." Compl. p. 3. Plaintiff implies that this somehow constituted a form of racial harassment, and that, as of January 2, 2005, he believed he was being "retaliated against and [felt] like my Civil Rights have been grossly violated" as a result. *Id.* The factual basis of his sex discrimination claim is never set forth. There are no allegations at all concerning his rate of pay. Although plaintiff invoked this Court's jurisdiction, in part, under Title VII of the Civil Rights Act of 1964, Compl. ¶ 4, he does not actually allege any claims under Title VII anywhere in his complaint.

A.    Plaintiff Fails To State A Claim Under The Equal Pay Act

The Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), prohibits employers from discriminating

> between employees **on the basis of sex** by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor than sex [.]

29 U.S.C. § 206(d)(1) (emphasis added).  Thus, "[t]o establish a violation of the Equal Pay Act, a plaintiff must demonstrate that 'the employer paid male and female employees different wage rates for substantially equal work.'" *Turner v. District of Columbia*, 383 F. Supp. 2d 157, 179 (D.D.C. 2005) (quoting *Broadus v. O.K. Industries, Inc.*, 226 F.3d 937, 941 (8th Cir. 2000)).

The EPA does *not* prohibit discrimination in other aspects of employment – even those that have compensation-related consequences – such as terminations, promotions, and transfers. *See, e.g., Shamey v. Adminstrator, GSA*, 732 F. Supp. 122, 135 (D.D.C. 1990) (EPA does not cover claims for an employer's refusal to provide a rate of pay commensurate with the employee's job duties and responsibilities), *aff'd per curiam*, 925 F.2d 490 (D.C. Cir. 1991); *Grant v. General Motors Corp.,* 908 F.2d 1303, 1311 (6th Cir. 1990) (EPA does not cover transfers to lower paying jobs); *Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124, 130 (7th Cir. 1989) (discriminatory promotions not actionable).  Likewise, the EPA does not provide a remedy for other forms of discrimination, such as race, and it does not provide a cause of action for harassment or retaliation.  *See* 29 U.S.C. § 206(d).

Accordingly, plaintiff's claims for discrimination based upon his *race* under the EPA in Counts One, Four, and Six must be dismissed for failure to state a claim, as the EPA does not prohibit discrimination based upon race.  Likewise, plaintiff's claims for harassment, retaliation and "constructive discharge" under the EPA in Counts One, Two, Three, Four, and Six must be dismissed for failure to state a claim, as the EPA does not provide a cause of action for such non-wage claims.

Finally, plaintiff's claims for discrimination under the EPA based upon his sex in Counts One, Five and Six of his complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), as he does not allege that Giant paid male and female employees different wage rates for substantially

equal work.[1] *Turner*, 383 F. Supp. 2d at 179.

    B.    Plaintiff Fails To State A Claim Under The "Whistle Blower Act"

Plaintiff does not provide the Court with any citation to the so-called "Whistle Blower

Act" referenced in his complaint.  To the extent he may be referring to the Federal

Whistleblower Protection Act of 1989, 5 U.S.C. § 1213, *et seq.*, that statute only applies to

employees of the United States Government.  *Id.*  Likewise, to the extent plaintiff is referring to

the D.C. Whistleblower Protection Act, D.C. Code §  1-615.51, *et seq.* (2006), he likewise fails

to state a claim, as that statute only applies to employees of the District of Columbia

Government, and plaintiff was never employed in D.C.  *Id.*  Plaintiff's allegations under the

"Whistle Blower Act" in Counts One, Two, Three, Four, Five and Six must therefore be

dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

    C.    Plaintiff Does Not State a Claim Under Title VII

Although plaintiff does not allege a violation of Title VII of the Civil Rights Act of 1964,

as amended, 42 U.S.C. §§ 2000e, *et seq.*, in his complaint, he invokes Title VII as the basis for

this Court's jurisdiction.  *See* Compl. ¶ 4.  To the extent his complaint could be liberally

construed as attempting to state claims under Title VII, however, it must nevertheless be

dismissed, as he has failed to exhaust his administrative remedies and fails to state a claim upon

which relief could be granted under Title VII.

---

[1] Even if he had made such an allegation however, the undisputed evidence would show
that plaintiff, as a member of the bargaining unit whose terms and conditions of employment
were governed by the CBA, was paid in accordance with the pay-scale for his job classification
negotiated with the Union.  As stated in the Declaration of Bart Plano, submitted herewith,
employees of both sexes perform the job duties of Mr. Ashe's job classification, and the wage
scales paid for bargaining unit employees in Mr. Ashe's job classification apply equally to
employees of both sexes.  Plano Decl. ¶ 6 & Exh. B.

Title VII requires that a plaintiff file a charge with the EEOC prior to bringing suit. *See* 42 U.S.C. § 2000e-5(b); *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995), *cert. denied*, 517 U.S. (1996). This charge must be in writing and verified under oath or affirmation under penalty of perjury. *Edelman v. Lynchburg College*, 535 U.S. 106, 112 (2002). A person who believes that he has been the victim of discrimination must file a charge with the EEOC within 180 days of the adverse employment decision if he is in a "non-deferral state," 42 U.S.C. § 2000e-5(e)(1), or within 300 days of the employer's alleged wrongful conduct if he is in a "deferral state." *Id*. However, "for the 300-day limit to apply, a plaintiff in a deferral state must first initiate a proceeding with the State or local agency having authority to grant the desired relief." *Major v. Plumbers Local Union No. 5*, 370 F. Supp. 2d 118, 126 (D.D.C. 2005) (citing 42 U.S.C. § 2000e-5(e)(1); *Simpkins v. Washington Metropolitan Area Transit Auth.*, 1997 U.S. App. LEXIS 34629 at *8 (D.C. Cir. Oct. 10, 1997) (copy attached) ("Title VII grants a 300-day filing period only when the would-be plaintiff 'has initially instituted proceeding with a State or local agency'") (quoting 42 U.S.C. § 2000e-5(e)(1))).

In *Simpkins,* the unpublished opinion of the D.C. Circuit cited by this Court in *Major,* the Court explained:

> By its terms, Title VII grants a 300-day filing period only when the would-be plaintiff "has initially instituted proceedings with a State or local agency." 42 U.S.C. § 2000e-5(e)(1). The Supreme Court has explained that the purpose of the longer filing period in "deferral states" (i.e., those with a local agency empowered to address discrimination) is "to prevent forfeiture of a complainant's federal rights while participating in state proceedings." *Mohasco Corp. v. Silver*, 447 U.S. 807, 821, 65 L. Ed. 2d 532, 100 S. Ct. 2486 (1980). If the complainant is not participating in a state proceeding, then there is no reason to extend the 180-day filing period. "To allow a Title VII litigant the benefit of the extended limitations period merely because she fortuitously works in a deferral state would ignore the plain language of the statute and its legislative purpose." *Kocian v. Getty Refining & Marketing Co.,* 707 F.2d 748, 751 (3rd Cir. 1983).

1997 U.S. App. LEXIS 34629 at *8.

This charge-filing requirement is integral to the entire scheme of Title VII. As the Supreme Court recently explained, the charge-filing requirement has the dual purpose of establishing both a statute of limitations and an obstacle to frivolous claims:

> The point of the time limitation is to encourage a potential charging party to raise a discrimination claim before it gets stale, for the sake of a reliable result and a speedy end to any illegal practice that proves out. The verification requirement has the different object of protecting employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury.

*Edelman,* 535 U.S. at 112-13 (footnotes omitted).[2]  *See also EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 n.32 (1984) ("[t]he function of an oath is to impress upon its taker an awareness of his duty to tell the truth").

Only after the EEOC has had an opportunity to investigate a complaint and the plaintiff receives a right to sue letter is a civil action permissible.  *See* 42 U.S.C. § 2000e-5(f)(1).  "The requirement that a plaintiff first pursue administrative remedies is a mandatory prerequisite to bringing a suit."  *Major*, 370 F. Supp. 2d at 124 (citing 29 C.F.R. § 1614 *et seq.*; *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997); *Brown v. District of Columbia,* 251 F. Supp. 2d 152, 161 (D.D.C. 2003) ("the exhaustion requirement is mandatory")).  "[W]hen an individual files an EEOC charge and then brings a subsequent civil action, the scope of the civil action is generally limited to those complaints asserted in the EEOC charge."  *Major*, 370 F. Supp. 2d at 125 (citing *Johnson v. Albright,* 992 F. Supp. 37, 39 (D.D.C. 1998) (an employee cannot maintain an action that was never presented to an agency for consideration); *Higbee v. Billington,* 246 F. Supp. 2d 10, 16 (D.D.C. 2003) (holding that charge for failure to promote in

---

[2] *See also Edelman,* 535 U.S. at 115 ("A complaint to the EEOC starts the agency down the road to investigation, conciliation, and enforcement, and it is no small thing to be called upon to respond. As we said before, the verification provision is meant to provide some degree of insurance against catchpenny claims of disgruntled, but not necessarily aggrieved, employees.").

1993 did not exhaust administrative remedies for claims of failure to promote arising in subsequent years)).  *See also Caldwell v. ServiceMaster Corp.,* 966 F. Supp. 33, 49-50 (D.D.C. 1997) ("An allegation of race-based discrimination does not, by itself, include an allegation of sex discrimination; these allegations are discrete, and they must be identified specifically and separately [in the EEOC charge].").

As a preliminary matter, Giant notes that plaintiff does not allege anywhere in his complaint that he either filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") or ever received a Notice of Right to Sue under Title VII. Plaintiff's Title VII claims, to the extent he is trying to make any, must therefore be dismissed for failure to state a claim upon which relief may be granted.  *See generally* 42 U.S.C. §§ 2000e-5 (Title VII charge filing requirements and conditions precedent to private civil actions).

Nevertheless, Giant notes that, although not alleged in the complaint, plaintiff actually *did* file a Charge with the EEOC.  On or about October 12, 2005, Giant received a Notice of Charge of Discrimination from the EEOC, enclosing a Charge of Discrimination allegedly executed by Kareem Ashe on September 15, 2005, bearing EEOC Charge No. 120-2005-03431. The Charge stated that it is based on "race" discrimination, "retaliation," and "unlawful termination."  It did not allege sex discrimination in any way.  Giant has never been served with and has no knowledge of any other Charge of Discrimination filed by Mr. Ashe.  *See* Plano Decl. ¶ 9 & Exh. C.

Giant subsequently received a Dismissal and Notice of Rights from the EEOC, dated October 7, 2005, stating that the EEOC was unable to conclude that the information obtained by it established a violation of the statutes.  *See* Plano Decl. ¶ 10 & Exh. D.  Giant has never been

served with and has no knowledge of a Charge of Discrimination Mr. Ashe filed with any State,

District of Columbia or local fair employment practices agency.  Plano Decl. ¶ 11.

In his EEOC charge, plaintiff recounts the allegations of December 2004 and January

2005 found in his complaint, verbatim.  Plano Decl. Exh. C; *see also* Compl. at p. 3.  He does *not*

mention sex discrimination at all; he does *not* mention harassment on the basis of race or sex at

all.  Accordingly, the allegations of sex discrimination and harassment on the basis of race and

sex set forth in Counts One, Three, Four, Five and Six of the complaint must be dismissed for

failure to exhaust his administrative remedies under Title VII.

Although plaintiff alleged race discrimination and retaliation relating to the December

2004 "Doo-Rag" incident in his EEOC charge, any claim based upon those events are time-

barred.  As plaintiff has never "instituted proceedings with a State or local agency," 42 U.S.C. §

2000e-*5*(e)(1), he was required to file a charge of discrimination within 180 days of the alleged

discriminatory conduct.  On page 3 of his complaint, plaintiff alleges that he received a

"Disciplinary Notice" regarding the "Doo-Rag" incident on December 19, 2004, to which he

responded on January 2, 2005, claiming that he was "now being retaliated against."  Compl. at p.

3.  As the EEOC charge was dated September 15, 2005, more than 180 days after the alleged

unlawful conduct, the claims of discrimination and retaliation are time-barred.  *Major*, 370 F.

Supp. 2d at 126 (citing 42 U.S.C. §  2000e-5(e)(1); *Simpkins,* 1997 U.S. App. LEXIS 34629 at

*8).  As no other allegations of racial discrimination or retaliation "during the course of his

employment" appear in the complaint, all such claims must be dismissed (*i.e.,* Counts One, Two,

Four, and Five).[3]

---

[3] In his EEOC Charge, plaintiff also claimed that he received two reprimands in May 2005 for leaving work "early" to "attempt" to file an EEOC charge with the Washington, D.C.

That leaves the allegations in Count Three that Giant "retaliated against [him] by constructively terminating his employment … because of [his] allegations of discrimination, hostile work environment and retaliation," Compl. ¶ 21, and his claim in Count Six that the Company violated the Equal Pay Act and the Whistle Blower Act by "constructively terminating" him "on the basis of race."  Compl. ¶ 33.

To the extent plaintiff is trying to allege that his termination was in retaliation for engaging in protected conduct under Title VII, the claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).  To establish a *prima facie* case of retaliation under Title VII, the plaintiff must show "1) that [he] engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection existed between the two."  *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999) (citations omitted); *Patterson v. Johnson*, 391 F. Supp. 2d 140, 149 (D.D.C. 2005) (same).

The only potentially "protected activity" alleged in the complaint is plaintiff's January 2, 2005 "written response" regarding the "Disciplinary Notice," in which he claims to have stated that he feels like he is he was "now being retaliated against and [felt] like [his] Civil Rights have been grossly violated by Rodney Harris."  Compl. at p. 3.  Plaintiff was discharged by Giant nearly six months later, on June 24, 2005, for violation of the Absentee Control Program negotiated between Local 400 and Giant regulating excessive employee absenteeism.  Plano Decl. ¶ 7.  Thus, in order to state a *prima facie* case of retaliatory termination, plaintiff must establish a causal connection between his January 2005 conduct and his termination.

When a court is asked to "accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of

Field Office of the EEOC.  *However, no such allegations appear in his federal court complaint.* Plaintiff has apparently abandoned the claim.

13

causality," the Supreme Court has cautioned that "the temporal proximity must be very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (quoting O'*Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). In two of the cases the Supreme Court cited to support this proposition, the circuit courts rejected delays of less than 4 months as insufficient to establish causation. *See Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (3-month delay insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month delay insufficient).

This Court has often followed a three-month rule to establish causation on the basis of temporal proximity alone. *See Willingham v. Gonzales*, 391 F. Supp. 2d 52, 61-62 (D.D.C. 2005) (citing *Buggs v. Powell*, 293 F. Supp. 2d 135, 148 (D.D.C. 2003); *Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105, 118-19 (D.D.C. 2004) (referring to end of three-month window as "outer limit" of "temporal requirement in a retaliation case")). Here, nearly six months elapsed between the alleged protected activity and the discharge. Plaintiff fails to state a claim upon which relief may be granted.[4]

As for termination based on race in violation of Title VII, to the extent plaintiff is even making such a claim, the complaint contains absolutely no facts to support the conclusory legal allegation that he was "constructively" discharged "on the basis of his race." Compl. ¶ 33. On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff. "However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint." *Shelton v. England*,

---

[4] Of course, to the extent that plaintiff could establish a *prima facie* case, Giant has articulated its legitimate, non-retaliatory reason for the discharge, *see* Plano Decl. ¶ 7, and plaintiff has no evidence (or allegation) that the articulated reason is a pretext for unlawful retaliation.

2005 U.S. Dist. LEXIS 36126 *6 (D.D.C. 2005) (copy attached) (citing *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  "Even under the generous standard of pleading set forth, conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Chandamuri v. Georgetown Univ.*, 274 F. Supp. 2d 71, 85 (D.D.C. 2003).  With this in mind, courts are not precluded from considering whether the plaintiff has failed to allege sufficient facts in his complaint to sustain his claim even at the *prima facie* case stage.  *Brooks-Miller v. England*, 357 F. Supp. 2d 197, 202 (D.D.C. 2004).  *See also Niedermeier v. Office of Max S. Baucus*, 153 F. Supp. 2d 23, 31 (D.D.C. 2001) (conclusory allegations of retaliatory conduct insufficient to survive a motion to dismiss).  As plaintiff presents nothing more than the conclusory allegation that he was constructively discharged on the basis of his race, his claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[5]

## II.    PLAINTIFF'S "CONSTRUCTIVE DISCHARGE IN VIOLATION OF PUBLIC POLICY" CLAIM MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM, AS A PUBLIC POLICY WRONGFUL DISCHARGE CLAIM MAY NOT BE PREDICATED UPON AN ALLEGED VIOLATION OF THE EQUAL PAY ACT OR TITLE VII, AND THE FOURTEENTH AMENDMENT HAS NO APPLICABLILITY TO PRIVATE EMPLOYERS

In Count Seven of his *pro se* complaint, plaintiff alleges that he was "constructively terminated due to the discriminatory, harassing and retaliatory actions of the agents and supervisory employees of Giant."  Compl. ¶ 37.  This "constructive termination," plaintiff alleges, "violated public policy, as articulated in inter alia, the Equal Pay Act of 1963, as amended, [Title VII] 42 U.S.C. Section 2000e et seq.; and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States."  Compl. ¶ 38.  Putting aside the

---

[5] To the extent that plaintiff could establish a *prima facie* case of discrimination, Giant has articulated its legitimate, non-discriminatory reason for the discharge, *see* Plano Decl. ¶ 7, and plaintiff has no evidence (or allegation) that the articulated reason is a pretext for unlawful race discrimination.

fact that Giant *actually*, not *constructively*, terminated plaintiff, plaintiff fails to state a claim upon which relief may be granted as a matter of law.

The District of Columbia Court of Appeals recognizes "an intentional tort for wrongful discharge based upon a 'very narrow' public policy exception to the at-will doctrine."[6] *Fingerhut v. Children's Nat'l Med. Ctr.,* 738 A.2d 799, 803 (D.C. 1999). *See also Carl v. Children's Hosp.,* 702 A.2d 159, 164 (D.C. 1997) (en banc); *Adams v. George W. Cochran & Co.,* 597 A.2d 28, 30 (D.C. 1991). The wrongful discharge in violation of District of Columbia public policy *exception to the employment at-will doctrine* is plainly unavailable to plaintiff, as he never worked for Giant in the District of Columbia as an "at-will" employee or otherwise; he was employed in Maryland and the terms and conditions of his employment were exclusively governed by the CBA. *See, e.g., Sokos v. Hilton Hotels Corp*., 283 F. Supp. 2d 42, 48 & n.2 (D.D.C. 2003) (finding tort inapplicable to employee subject to collective bargaining agreement). Moreover, as the Court must interpret and apply the terms of the CBA to resolve plaintiff's claim (*i.e.*, to determine whether he was an at-will employee and whether the discharge was "wrongful" under the terms of the agreement that governed his employment with Giant), the claim is preempted by Section 301 of the LMRA, 28 U.S.C. § 185, and must be dismissed for the reasons set forth in Section III, *infra.*

Even if the cause of action in tort were available to plaintiff, however, and even if the claim were not completely preempted by Section 301, the Court must nevertheless dismiss the claim pursuant to Fed. R. Civ. P. 12(b)(6), as a public policy wrongful discharge claim can not,

---

[6] It is "well-settled law 'in the District of Columbia that an employer may discharge an at-will employee at any time and for any reason, or for not reason at all.'" *Sokos v. Hilton Hotels Corp*., 283 F. Supp. 2d 42, 48 n.2 (D.D.C. 2003) (quoting *Adams v. George W. Cochran & Co.,* 597 A.2d 28, 30 (D.C. 1991) (citations omitted)).

as a matter of law, be predicated upon an alleged violation of the Equal Pay Act, Title VII or the Fourteenth Amendment.

As the Court of Appeals recently explained, although the Court in *Carl* "left future applications of the tort to be decided on a case-by-case basis, [the Court] stressed that any such application must be 'carefully tethered to fundamental policies' implicit in 'statutes or municipal regulations, or in the Constitution.'"  *District of Columbia v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 645 (D.C.), *cert. denied*, 126 S. Ct. 399 (2005) (quoting *Carl,* 702 A.2d at 164).  In succeeding cases, however, in "deference to the legislative role," "the court [has] declined to apply this cause of action where the policy in question was not implicit – *i.e.*, embodied in some related statute – but rather was 'explicit and [might] apply directly' through a statute expressly addressing the matter."  *Id.* (quoting *Freas v. Archer Servs., Inc.,* 716 A.2d 998, 1002 (D.C. 1998) (rejecting application of *Carl* as unnecessary where suit was based on statutorily banned and actionable retaliation for exercising rights under the D.C. Workers' Compensation Act)).

In *McManus v. MCI Communications Corp.,* 748 A.2d 949 (D.C. 2000), *cert. denied*, 531 U.S. 1183 (2001), the Court noted and applied its previous rejection of "the argument . . . that a public policy exception to the at-will doctrine applies to an alleged statutory violation."  *Id.* at 957 (citing *Freas,* 716 A.2d at 1002).  Specifically, the Court expressly refused to recognize a public policy exception to the at-will doctrine based upon an alleged violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401.01, *et seq.  Id.*

Here, as in *McManus*, *Freas* and *Beretta*, both the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and Title VII, 42 U.S.C. § 2000e, *et seq.*, provide express statutory frameworks for

addressing and remedying discharges in alleged violation of the statute,[7] and plaintiff's "public policy" claim based upon an alleged violation of the Title VII and the Equal Pay Act thus fails to state a claim upon which relief may be granted.[8]

Likewise, the Equal Protection Clause of the Fourteenth Amendment cannot form the basis for plaintiff's public policy claim, as the Fourteenth Amendment has no applicability to private employers, such as Giant.  Moreover, plaintiff does not (and can not) allege that Giant ever acted under color of state law, which could give rise to a potential claim under 42 U.S.C. §1983, the remedial statute established for such claims.  In any event, plaintiff does not allege how Giant has violated the "public policy" established by the Fourteenth Amendment.  Plaintiff thus fails to state a claim upon which relief may be granted.

## III.    PLAINTIFF'S BREACH OF CONTRACT AND WRONGFUL DISCHARGE CLAIMS ARE COMPLETELY PREEMPTED BY SECTION 301 OF THE LMRA, AND PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER SECTION 301

In addition to his D.C. common law claim for "constructive discharge in violation of public policy" (Count Seven), plaintiff alleges in Count Eight of his complaint that Giant "breached the employment contract with plaintiff Ashe due to the discriminatory, harassing and

---

[7] *See* 42 U.S.C. § 2000e-5 (Title VII enforcement provisions); 29 U.S.C. § 216(d) (private right of action under Equal Pay Act).

[8] To the extent Maryland law could apply in this case, as plaintiff was employed by Giant exclusively in Maryland, the result is the same.  *See, e.g. Hart v. Harbor Court Assocs.*, 46 F. Supp. 2d 441, 444 (D. Md. 1999) ("Maryland law, however, only allows claims for wrongful discharge in cases 'which otherwise would not be vindicated by a civil remedy.'") (quoting *Makovi v. Sherwin-Williams Co.*, 316 Md. 603, 605, 561 A.2d 179, 180 (1989))  *See also Watson v. Peoples Security Life Ins. Co.*, 322 Md. 467, 480, 588 A.2d 760, 766 (1991); *Kerrigan v. Magnum Entertainment*, 804 F. Supp. 733, 735 (D. Md. 1992); *Parlato v. Abbott Laboratories*, 850 F.2d 203, 206 (4th Cir. 1988).

retaliatory actions of the agents and supervisory employees of Giant."  Compl. ¶ 42.  The

"employment contract," of course, is the CBA between Giant and Local 400.[9]

Claims for breach of collective bargaining agreements are governed exclusively by

Section 301(a) of the Labor-Management Relations Act, 1947 ("LMRA"), 29 U.S.C. § 185(a).[10]

Section 301 confers subject matter jurisdiction on the federal courts over controversies involving

collective bargaining agreements.  29 U.S.C. § 185(a); *Lingle v. Norge Div. of Magic Chef, Inc.*,

486 U.S. 399, 403 (1988).  Section 301 is more than just a jurisdictional statute, however.  The

Supreme Court has held that Section 301 "authorizes federal courts to fashion a body of federal

law for the enforcement of . . . collective bargaining agreements," *Textile Workers Union v.*

*Lincoln Mills of Alabama*, 353 U.S. 448, 451 (1957), which "uniformly … prevail[s] over

inconsistent local rules."  *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers v. Lucas*

*Flour Co.*, 369 U.S. 95, 104 (1962); *see also Livadas v. Bradshaw*, 512 U.S. 107, 122 (1994);

*Bush v. Clark Constr. & Concrete Corp.*, 267 F. Supp. 2d 43, 46 (D.D.C. 2003).

Thus, in cases involving collective bargaining agreements, state laws purporting "to

define the meaning or scope of a term in a contract suit [are] pre-empted by federal labor law."

---

[9] Documents referenced in the complaint are deemed to be included as part of the
complaint for purposes of ruling on a Rule 12(b)(6) motion.  *Cortec Industries, Inc. v. Sum*
*Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992).  In addition, the
Court can take into consideration a document integral to the complaint without converting the
motion into a summary judgment motion under Rule 56, even if the plaintiff failed to attach or
incorporate the document by reference.  *See International Audiotext Network, Inc. v. American*
*Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).  This is particularly appropriate when ruling on
issues of federal labor law preemption based on the incontrovertible existence of a collective
bargaining agreement.  *See, e.g., Carvalho v. International Bridge & Iron Co.*, 2000 U.S. Dist.
LEXIS 4419, *2 (D. Conn. Feb. 25, 2000) (copy attached); *Argento v. Airborne Freight Corp.*,
933 F. Supp. 373, 376 n.2 (S.D.N.Y. 1996); *Wilhelm v. Sunrise Northeast, Inc.*, 923 F. Supp. 330
(D. Conn. 1995).

[10] Section 301 states:  "suits for violation of contracts between an employer and a labor
organization representing employees . . . may be brought in any district court of the United States
having jurisdiction of the parties . . . ."  29 U.S.C. § 185(a).

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985). *See also Bush*, 267 F. Supp. 2d at 46 (dismissing as "completely preempted" under Section 301 state law claim for recovery of wages arising from and requiring interpretation of collective bargaining agreement). Likewise, when the "resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement," the state law claim is pre-empted. *Lingle*, 486 U.S. at 405-06. "When the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Bush*, 267 F. Supp. 2d at 45 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)).

As noted in Section II, *supra*, plaintiff's "public policy" wrongful discharge claim is substantially dependent upon an interpretation and application of the CBA, as the Court must review, interpret and apply the agreement to determine whether plaintiff was an "at-will" employee entitled to invoke the "public policy" tort. The Court must also review, interpret and apply the CBA to determine whether plaintiff's discharge was, in fact, "wrongful" within the meaning of the CBA. *See, e.g., Sokos*, 283 F. Supp. 2d at 47-49 (wrongful discharge claim preempted by Section 301). Plaintiff's "breach of contract" claim is even more straightforward, as Section 301 expressly governs claims for breach of collective bargaining agreements. *See, e.g., Bush*, 267 F. Supp. 2d at 46 (state law breach of contract claim preempted by Section 301).

When resolution of a state law claim depends upon the interpretation of a collective bargaining agreement, "the claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp.*, 471 U.S. at 220. Under Section 301, an employee covered by a collective bargaining agreement ***must*** seek enforcement of his rights through the union by whatever procedure has been bargained, and the employee is ordinarily bound by the result of the procedure according to the finality provisions of the

collective bargaining agreement. *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990); *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 163-64 (1983); *Chester v. Washington Metro. Area Trans. Auth.*, 335 F. Supp. 2d 57, 64 (D.D.C. 2004); *Payne v. Giant Food, Inc.*, 346 F. Supp. 2d 15, 19 (D.D.C. 2004).

The collective bargaining agreement between the parties in this case contains a **mandatory** grievance and arbitration provision. Plano Decl. Exh. B (CBA Art. 21 ("Grievances and Arbitration")). Under this provision, all disputes "concerning the interpretation of the provisions of this Agreement" including discharge of employees, "***shall***" be handled through the final and binding grievance and arbitration process. CBA Art. 21 § 21.1. In the present action, plaintiff failed to exhaust this mandatory process. Although plaintiff's Union actually did file a grievance on plaintiff's behalf, plaintiff voluntarily withdrew from the process and no arbitration was ever pursued by the Union. *See* Plano Decl. ¶ 8.

An employee who fails to use mandatory grievance procedures is ordinarily barred from maintaining an independent action against his employer in federal court for breach of the collective bargaining agreement due to his failure to exhaust his contractual remedies. *Terry*, 494 U.S. at 564; *Chester*, 335 F. Supp. 2d at 64-65; *Bush*, 267 F. Supp. 2d at 46-47 (citing *Majewski v. B'nai B'rith Int'l*, 721 F.2d 823, 824 (D. C. Cir. 1983)). The ***only*** exceptions to this exhaustion rule are when the Company "effectively repudiated the grievance procedures of the CBA," *Chester*, 335 F. Supp. 2d at 64, or where the union representing the employee in the grievance or arbitration procedure acts in such a discriminatory, dishonest, arbitrary or perfunctory fashion as to breach its duty of fair representation in the processing of the employee's grievance. *DelCostello*, 462 U.S. at 164 (citing *Vaca v. Sipes*, 386 U.S. 171 (1967)). *See also Payne*, 346 F. Supp. 2d at 19; *Chester*, 335 F. Supp. 2d at 64-65.

If this occurs, the employee may then bring a "hybrid" action in federal court. Such a suit is termed "hybrid" because it combines a claim for breach of the collective bargaining agreement under Section 301 of the LMRA, 29 U.S.C. § 185(a), with a claim against the union for breach of the duty of fair representation under the National Labor Relations Act ("NLRA"). *Brown v. Gino Morena Enterprs.*, 44 F. Supp. 2d 41, 44 & n.2 (D.D.C. 1999) (citing *O'Hara v. District No. 1-PCD, MEBA*, 56 F.3d 1514, 1520 (D.C. Cir. 1995)). The two claims are "inextricably interdependent." *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 84 n.8 (1989). *See also Chester,* 335 F. Supp. 2d at 65 (same) (quoting *DelCostello*, 462 U.S. at 164-65).

As the Supreme Court explained in *Teamsters v. Terry*,

> Whether the employee sues both the labor union and the employer or only one of those entities, he ***must*** prove the same two facts to recover money damages: that the employer's action violated the terms of the collective-bargaining agreement ***and*** that the union breached its duty of fair representation.

494 U.S. at 564 (emphasis added). *See also Vaca*, 386 U.S. at 186 ("[T]he wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, *provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance*.") (emphasis added). *See also Chester,* 335 F. Supp. 2d at 65 (same).

Nowhere in his Complaint does plaintiff allege that he exhausted his contractual remedies, that the Company repudiated the grievance procedure, or that his Union breached the duty of fair representation in the handling of his grievance. Because plaintiff has failed to plead these essential elements of his claim, plaintiffs' Section 301 breach of contract claim ***must*** be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. *See, e.g., Chester,* 335 F. Supp. 2d at 65 (dismissing claim under Rule 12(b)(6)

where plaintiff failed to allege that defendant repudiated the CBA grievance procedures or that

his union breached its duty of fair representation); *Bush*, 267 F. Supp. 2d at 47 (motion to

dismiss granted where plaintiff failed to alleged that he "pursued his grievance with the Union or

took any action to exhaust the procedures in the CBA").

## CONCLUSION

For all the foregoing reasons, defendant Giant of Maryland LLC respectfully requests

that the Court grant its motion dismiss and enter an order dismissing the complaint, in its

entirety, with prejudice.

Dated: January 24, 2006

_____/s/ Henry A. Platt_____
Edward R. Levin (D.C. Bar No. 7823)
Henry A. Platt (D.C. Bar. No. 425994)
Schmeltzer, Aptaker & Shepard, P.C.
2600 Virginia Ave., N.W., Ste. 1000
Washington, DC 20037-1922
(202) 333-8800

Attorneys for Defendant
Giant of Maryland, LLC

LEXSEE

**Marilyn Simpkins, Appellant v. Washington Metropolitan Area Transit Authority, Appellee**

**No. 96-7188**

**UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**1997 U.S. App. LEXIS 34629**

**October 10, 1997, Filed**

**NOTICE:** [*1] RULES OF THE DISTRICT OF COLUMBIA CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: 1997 U.S. App. LEXIS 40307.

**PRIOR HISTORY:** Appeal from the United States District Court for the District of Columbia. (No. 95cv00237).

**DISPOSITION:** Affirmed in part and reversed in part, and remanded.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant employee sought review of an order from the United States District Court for the District of Columbia, which granted appellee employer's motion for summary judgment in an action for employment discrimination and breach of contract.

**OVERVIEW:** The employee brought an action against her employer for breach of contract and employment discrimination after she was discharged from her job and after the employer refused to reinstate her. The district court dismissed her discrimination and contract claims, finding that they were time barred. The employee sought review. On appeal, the court reversed in part, affirmed in part, and remanded. The court reversed the dismissal of the discrimination claims because the 180 day time limit of 42 U.S.C.S. 2000e-1(1) would be tolled if her failure to file on time was due to failure of the Equal Employment Opportunity Commission to properly inform the employee of the availability of relief and if she had not hired counsel when the time limit expired. On

remand, the court directed the trial court to determine whether the employee could produce evidence to show that she qualified for the protection of the equitable tolling doctrine.

**OUTCOME:** The court affirmed the trial court's order dismissing the employee's breach of contract claim against the employer, but reversed the order dismissing the employee's discrimination claim and remanded the case for further proceedings consistent with its opinion.

**CORE TERMS:** filing period, grievance, closure, equitable tolling, summary judgment, local agency, tolled, sworn, motion to dismiss, complain, untimely, subject matter jurisdiction, breach-of-contract, reinstate, genuine issue, time-barred, collective bargaining agreement, settlement agreement, reasonable time, disability, repudiated, memorandum, tolling, receiving notice, aggrieved party, bringing suit, participating, instituted, unresolved, deferral

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN1] Whether the court treats a motion as a motion for summary judgment or as a motion to dismiss, its review is de novo.

*Civil Procedure > Summary Judgment > Summary Judgment Standard*
[HN2] A motion for summary judgment should be granted only if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c).

*Labor & Employment Law > Discrimination >*

*Disability Discrimination*
*Governments > Legislation > Statutes of Limitations >*
*Time Limitations*
[HN3] Before bringing suit on a Title VII or the
Americans with Disabilities Act, an aggrieved party must
file a charge of discrimination with the Equal
Employment Opportunity Commission (EEOC). The
charge should normally be filed within 180 days after the
alleged discrimination occurred. 42 U.S.C.S. §
2000e-5(e)(1). If the aggrieved party has initially
instituted proceedings with a state or local agency with
authority to grant or seek relief from the discrimination,
then the EEOC charge may be filed within 300 days of
the alleged discrimination (or within 30 days after
receiving notice that the state or local agency has
terminated its proceedings).

*Governments > Legislation > Statutes of Limitations >*
*Time Limitations*
[HN4] Title VII grants a 300-day filing period only when
the would-be plaintiff has initially instituted proceedings
with a state or local agency. 42 U.S.C.S. § 2000e-5(e)(1).

*Governments > Legislation > Statutes of Limitations >*
*Time Limitations*
[HN5] The filing period for an Equal Employment
Opportunity Commission complaint does not begin to run
until the facts that would support a charge of
discrimination under Title VII, 42 U.S.C.S. § 2000e-5(b)
are or should be apparent to a person with a reasonably
prudent regard for his rights similarly situated to the
plaintiff.

*Governments > Legislation > Statutes of Limitations >*
*Tolling*
[HN6] The filing of a sworn charge is not a prerequisite
to equitable tolling. On the contrary, the very reason
equity tolls the filing period is to permit the late filing of
a sworn charge; if a complainant has filed a charge, then
she has no need of tolling the filing period.

*Labor & Employment Law > Collective Bargaining &*
*Labor Relations > Arbitration > Exhaustion of*
*Remedies*
[HN7] There is an exception to the requirement of
exhaustion of grievance procedures when a union
wrongfully refuses to bring an employee's grievance.
Failure to file a grievance or otherwise established that
doing so would have been futile bars a case from coming
within the exception.

**COUNSEL:** For MARILYN SIMPKINS: Alan Banov,
Law Office of Alan Banov, Washington, DC.

For WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY: Robert L. Polk, General
Counsel, Robert J. Kniaz, Deputy General Counsel,
Gerard Joseph Stief, Associate General Counsel, David
R. Keyser, Assistant General Counsel, Washington Metro
Area Transit Authority (WMATA), Office of the General
Counsel, Washington, DC.

**JUDGES:** Before: WALD, WILLIAMS, * and
GINSBURG, Circuit Judges. WILLIAMS, Circuit Judge,
concurring and dissenting.

> * A statement by WILLIAMS, Circuit Judge,
> concurring in part and dissenting in part, is also
> attached.

**OPINION:**

**JUDGMENT**

This appeal was considered on the record from the
United States District Court for the District of Columbia
and on the briefs and arguments of counsel. The court is
satisfied that appropriate disposition of this [*2] case
does not call for a published opinion. *See* D.C. Cir. Rule
36(b).

For the reasons in the attached memorandum, it is

ORDERED and ADJUDGED that the district court's
orders filed July 19, 1996 and February 20, 1997 be
affirmed in part and reversed in part, and that the case be
remanded for further proceedings consistent with the
attached memorandum.

The Clerk is directed to withhold issuance of the
mandate herein until seven days after disposition of any
timely petition for rehearing. *See* D.C. Cir. Rule 41.

**MEMORANDUM**

*Per Curiam*: Marilyn Simpkins appeals the dismissal
by the district court of her suit for employment
discrimination and breach of contract against the
Washington Metropolitan Area Transit Authority
(WMATA). Although we agree with the district court
that Simpkins' failure to file a timely grievance with her
union prevents her from maintaining the
breach-of-contract claims, we do not think that the record
before us is sufficient to determine whether Simpkins
waited too long before filing discrimination charges with
the EEOC, as the district court found. Accordingly, we
affirm the judgment of the district court insofar as it
dismissed the breach-of-contract [*3] claims but reverse
the judgment insofar as it dismissed the discrimination
claims. The latter claims we remand for further findings

on the timeliness of her charges.

## I. BACKGROUND

WMATA discharged Marilyn Simpkins from her job as a WMATA metrorail operator on October 12, 1991. During her employment Simpkins was in a bargaining unit represented by Amalgamated Transit Union, Local 689. Local 689 grieved on her behalf and reached a settlement agreement with WMATA on May 5, 1992 under which she would be reinstated if she provided medical records for WMATA's inspection and passed WMATA's physical examination within 20 days of receipt of the settlement agreement.

On June 26, 1992 WMATA wrote to the Union saying that Simpkins had failed to provide the necessary medical records and that it regarded the matter as closed. Simpkins alleges in her complaint that she first received a copy of the letter through her attorney in December 1992.

Simpkins further alleges that on October 30 and November 12, 1992 -- before receiving a copy of WMATA's closure letter -- she went to the EEOC field office in Washington, D.C. in order to complain about the way in which WMATA had treated her. On both occasions [*4] she was told that the EEOC could not help her, apparently because the agency viewed her complaint as untimely.

Sometime after November 12, 1992 Simpkins obtained legal counsel. Thereafter, she apparently changed lawyers at least once. On May 21, 1993 Simpkins' current attorney wrote to Local 689 asking that the Union grieve WMATA's continuing refusal to reinstate her; the Union declined on the ground that the grievance was untimely. On June 24, 1993 the attorney wrote to the EEOC to complain about WMATA's failure to examine or to reinstate her. Simpkins' sworn charge of discrimination followed on July 28, 1993. On October 24, 1994 the EEOC sent Simpkins a right-to-sue letter, which she received on or about November 4, 1994.

On February 3, 1995 Simpkins filed a four-count complaint in federal district court based upon WMATA's failure to give her a physical examination and to rehire her in 1992. Count I alleges that WMATA discriminated against her because of either her record of disabilities or its misperception that she was unable to work due to a disability, in violation of the Rehabilitation and of the Americans with Disabilities Acts. Count II alleges that WMATA discriminated against [*5] her on the basis of her sex and race, in violation of Title VII. Count III alleges that WMATA breached its collective bargaining agreement and Simpkins' settlement agreement. Count IV, a defamation claim, was voluntarily dismissed.

WMATA made a motion for summary judgment, which the district court treated as a motion to dismiss. The court held:

> Plaintiff's race, sex, and disability discrimination claims must be dismissed for lack of subject matter jurisdiction, because plaintiff failed to file her claims with the EEOC within 180 days of the alleged discrimination, and plaintiff has put forward no grounds on which the Court could invoke the doctrine of equitable tolling to salvage plaintiff's untimely-filed EEOC complaint. ...

> Plaintiff's breach of contract claim likewise is dismissed for failure to exhaust available administrative remedies -- namely, plaintiff failed to file a grievance with Local 689 of her Union following WMATA's termination of its efforts to reinstate her.

This appeal followed.

## II. ANALYSIS

Simpkins argues that the district court erred in dismissing her Title VII and ADA claims because either (1) the relevant filing period for an EEOC complaint [*6] is 300, not 180, days; or (2) the running of the filing period should be tolled because the EEOC erroneously rebuffed her attempts to file in October and November of 1992; and in either case (3) the period did not start running until she received a copy of WMATA's closure letter in December 1992. Finally, she asserts that the district court erred in dismissing her breach-of-contract claims because she attempted to exhaust the remedies provided in her collective bargaining agreement but the Union would not process a grievance for her.

[HN1] Whether we treat WMATA's motion as a motion for summary judgment or as a motion to dismiss, our review is *de novo. Wilson v. Pena,* 316 U.S. App. D.C. 352, 79 F.3d 154, 160 n.1 (D.C. Cir 1996). The district court apparently treated it as a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Strictly speaking, however, the requirement that a charge be timely filed with the EEOC is not jurisdictional; it is subject to waiver, estoppel, and equitable tolling. See *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 71 L. Ed. 2d 234, 102 S. Ct. 1127 (1982). [HN2] We shall therefore treat the motion as one for summary judgment, [*7] to be granted only if there is "no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). See *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 357 n.4, 3 L. Ed. 2d 368, 79 S. Ct. 468 (1959) ("The determinations made by the District Court ... were within the properly conceived scope of Rule 56. ... We need not restrict our disposition to the issue of

'jurisdiction' merely because the proceedings below were inartistically labeled"); *Mazaleski v. Treusdell, 183 U.S. App. D.C. 182, 562 F.2d 701, 708 (D.C. Cir. 1977)* (treating trial court's grant of motion to dismiss as award of summary judgment where parties relied upon affidavits and other materials outside pleadings).

A. The Discrimination Claims

[HN3] Before bringing suit on a Title VII or ADA claim an aggrieved party must file a charge of discrimination with the EEOC. The charge should normally be filed within 180 days after the alleged discrimination occurred. 42 U.S.C. § 2000e-5(e)(1). If the aggrieved party "has initially instituted proceedings with a State or local agency with authority to grant or seek relief" from the discrimination, then the EEOC charge may be filed within 300 days of the alleged discrimination [*8] (or within 30 days after receiving notice that the State or local agency has terminated its proceedings). *Id.* The district court's dismissal of Simpkins' claims is based in part upon its finding that the 180-day filing period applies in this case.

Simpkins argues that the 300-day period applies to her claims because she was a District of Columbia resident at the time of the discrimination and the D.C. Office of Human Rights (DCOHR) is a State or local agency authorized to grant or seek relief from discriminatory employment practices. Although Simpkins acknowledges that the filing period is 180 days where the State or local agency has no subject matter jurisdiction over a charge, *see* 29 C.F.R. § 1601.13(a)(2), she asserts that the DCOHR does have subject matter jurisdiction over a complaint made by an employee of WMATA.

The court need not decide today whether the DCOHR would have had jurisdiction over a charge against WMATA, for Simpkins never filed any charge with the DCOHR. By its terms, [HN4] Title VII grants a 300-day filing period only when the would-be plaintiff "has initially instituted proceedings with a State or local agency." 42 U.S.C. § 2000e-5(e)(1). The Supreme Court [*9] has explained that the purpose of the longer filing period in "deferral states" (i.e., those with a local agency empowered to address discrimination) is "to prevent forfeiture of a complainant's federal rights while participating in state proceedings." *Mohasco Corp. v. Silver, 447 U.S. 807, 821, 65 L. Ed. 2d 532, 100 S. Ct. 2486 (1980).* If the complainant is not participating in a state proceeding, then there is no reason to extend the 180-day filing period. "To allow a Title VII litigant the benefit of the extended limitations period merely because she fortuitously works in a deferral state would ignore the plain language of the statute and its legislative purpose." *Kocian v. Getty Refining & Marketing Co., 707 F.2d 748, 751 (3rd Cir. 1983).* We hold that because Simpkins

never filed a complaint with the DCOHR, nor has she alleged a worksharing agreement between the DCOHR and the EEOC such that her EEOC filing satisfied the local filing requirement, she had only 180 days within which to file charges with the EEOC.

Simpkins filed her charges in a letter that her attorney transmitted to the EEOC by telecopier on June 24, 1993. Although Title VII provides that a charge "shall [*10] be in writing under oath or affirmation," 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.9, and although Simpkins did not file a sworn charge until July 28, 1993, the later filing amended the earlier one, and as such "relate[s] back to the date the charge was first received." 29 C.F.R. § 1601.12(b). Simpkins' filing was timely, however, only if the filing period had not run for more than 180 days as of June 24, 1993.

[HN5] The filing period for an EEOC complaint does not begin to run "until the facts that would support a charge of discrimination under Title VII were apparent or should have been apparent to a person with a reasonably prudent regard for his rights similarly situated to the plaintiff." *Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924, 931 (5th Cir. 1975); Stoller v. Marsh, 221 U.S. App. D.C. 22, 682 F.2d 971, 974 (D.C. Cir. 1982).* In this case the factual question of when Simpkins became aware of the necessary facts remains unresolved. Upon remand the evidence may ultimately indicate, for all we know, that she had acquired the necessary knowledge as early as June 1992, in which case her claims would be time-barred, or as late as December 31, 1992, in which case [*11] they would not be, or at any time in between.

Taking the facts, as we must, in the light most favorable to Simpkins as the non-moving party, we are apprised of two ways in which the filing period may have started running late enough for Simpkins' filing to have been timely. First, Simpkins may have received her copy of the closure letter on or after December 26, 1992, that is, within 180 days of her June 24, 1993 filing. Second, even if she received the closure letter earlier in December, the running of the filing period may have been tolled by reason of misleading information the EEOC gave her in October and November. Even such misinformation would not have tolled the filing period indefinitely, of course. As soon as Simpkins, letter in hand, had or should have had the advice of counsel to counteract the effect of the EEOC's erroneous information, the 180-day period would have begun to run.

1. Receipt of the closure letter

Simpkins asserts both in her affidavit and in her complaint that she first received a copy of WMATA's June 26 closure letter in "December 1992." In its

Statement of Material Facts As To Which There Is No Genuine Dispute WMATA tries to pin the date down as December [*12] 3, 1992:

> Plaintiff alleges she did not receive a copy of WMATA's letter to James Thomas until December, 1992 through her attorney. December 3, 1992 is the date plaintiff claimed she received notice of said letter.

WMATA takes the December 3 date from the letter that Simpkins' counsel wrote to the EEOC on June 24, 1993. The record does not reveal how Simpkins' counsel came up with the December 3rd date.

Simpkins herself has repudiated that date and sworn that she does "not recall the exact date" she received WMATA's closure letter. Her Statement of Material Facts About Which There Are Genuine Disputes states that "she filed her EEOC complaint within 180 days of receiving the letter from WMATA" and adds the following footnote:

> Defendant accepts plaintiff's assertion that she did not receive that letter until December 1992. See Deft's Statement of Material Fact As to Which There Is No Genuine Dispute.

Therefore, there appears to be no dispute that Simpkins got the letter sometime in December 1992; on the record before us, however, we cannot say when in December. If Simpkins can prove on remand that she received the letter on or after December 26, 1992, then her [*13] filing the following June 24 will have been timely.

2. Equitable tolling of the filing period

The district court concluded that Simpkins "put forward no grounds on which the Court could invoke the doctrine of equitable tolling to salvage plaintiff's untimely-filed EEOC complaint." Here the district court cited *Harper v. Georgetown University*, 748 F. Supp. 6, 8 (D.D.C. 1990), another case in which it could find no ground upon which to toll the filing period. In *Harper*, however, the only argument in support of equitable tolling was that the defendant suffered no prejudice due to the complainant's delay in filing with the EEOC. *Id.* In the present case, by contrast, Simpkins has alleged certain visits to the offices of the EEOC where the agency may well have provided erroneous information that kept her from filing.

Specifically, Simpkins claims to have gone to the Washington field office of the EEOC on October 30 and on November 12, 1992 in order to complain about WMATA's discrimination; on each occasion EEOC personnel informed her that the agency could not help

her. According to Simpkins the EEOC treated her complaint as arising from her dismissal in October 1991, which [*14] was more than 180 (and indeed more than 300) days earlier, when in fact she was attempting to complain about WMATA's failure to reinstate her in May-July 1992.

Simpkins claims that the EEOC's misinforming her tolled the running of the filing period. For the court to hold otherwise, she maintains, would be to punish her for the EEOC's error: "At the very least, the disputed facts regarding her claim of equitable tolling should allow her to survive a motion to dismiss or for summary judgment." The question, then, is whether the kind of rebuff Simpkins allegedly received, viewed in the light most favorable to her, would occasion an equitable tolling of the statute of limitations.

WMATA's only response on this point -- that Simpkins "cannot seriously contend that these October 30 and November 12, 1992 visits to EEOC tolled the requirement because she did not comply with the statutory requirement of filing a sworn charge and did not file an action within 90 days of the alleged rejection of her alleged rebuff" [sic] -- misses the point. [HN6] The filing of a sworn charge is not a prerequisite to equitable tolling. On the contrary, the very reason equity tolls the filing period is to permit [*15] the late filing of a sworn charge; if a complainant has filed a charge, then she has no need of tolling the filing period.

If Simpkins went to the EEOC in October and November, and if she told the EEOC about the discrimination that allegedly occurred in May-July 1992, and if the EEOC, because it was considering only the alleged discrimination of October 1991, gave her the erroneous impression that her claim arising from the events of May-July 1992 was already untimely, or indeed that the civil rights laws do not permit one to file a claim for non-reinstatement, then that officially induced misapprehension would have tolled the running of the filing period. Even so, the tolling would not continue indefinitely. We know that Simpkins got her copy of WMATA's closure letter through a volunteer attorney, but we do not know the scope of that attorney's representation; current counsel suggests that the attorney acting for Simpkins in December 1992 may not have been available to do anything beyond obtaining information from WMATA or from Local 689 on her behalf. If that is the case, then Simpkins must be allowed a reasonable time after receiving WMATA's closure letter in which to engage other [*16] counsel to pursue her discrimination claims. Whenever she obtained new counsel, or when a reasonable time for obtaining such counsel had passed, the filing period began to run.

Therefore, if Simpkins received WMATA's closure

letter and obtained the advice of counsel regarding her rights against WMATA before December 26, 1992 -- whether from the lawyer who obtained the letter for her or from another -- then her discrimination claims are time-barred. Alternatively, if she received the letter before December 26, 1992 but waited an unreasonably long time before seeking legal advice, then the filing period may have started running before December 26, 1992, in which case her claims would likewise be time-barred. Only if Simpkins had not yet engaged counsel but the reasonable time in which to do so had not expired by December 26, 1992 could she qualify for equitable tolling to save her claim. Upon the present record, however, the matter is uncertain, and we cannot rule out the possibility that on remand Simpkins can produce evidence to that effect.

WMATA seeks to avoid a remand of the discrimination claims by arguing that yet another statute of limitations has run, namely, the 90-day period [*17] in which to file suit after receiving a right-to-sue letter from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1). In the district court, however, WMATA "conceded" that Simpkins "filed this suit within 90 days of receiving notice from the EEOC ... that she had a right to sue." On appeal WMATA seeks for the first time to withdraw that concession on the ground that it merely miscounted the days, but the time for noticing such an error has passed. The case must therefore be remanded for factual findings that will clarify (1) what the EEOC told Simpkins in October and November, (2) when Simpkins received the closure letter, (3) when thereafter she sought and obtained counsel, or by when she ought to have done so, and therefore (4) whether equitable tolling of the EEOC filing period is appropriate.

B. The Breach-Of-Contract Claims

The district court dismissed Simpkins' breach-of-contract claims due to her failure to exhaust union grievance procedures before bringing suit. In brief, Simpkins' collective bargaining agreement required her to file a written "Step 1" grievance form with Local 689 within 15 days of learning of her non-reinstatement in December 1992. Simpkins never filed a grievance [*18] form, nor indeed did she contact the Union for help before May 1993, well after the period for grieving had passed.

Simpkins acknowledges that she could have filed a Step 1 grievance but says that only the Union could process the grievance through the subsequent steps and then seek arbitration. She claims that the Union's failure to secure her reinstatement in May-July 1992, together with its refusal to pursue relief for her in May 1993, show that it would have been futile to file a grievance in December 1992, for the Union would never have

processed the grievance past Step 1. The present record indicates that Simpkins had no real reason to believe that the Union would refuse to cooperate with her; on the contrary, the facts establish only that the Union would not pursue a grievance that was untimely under the collective-bargaining agreement.

[HN7] There is, as the district court recognized, an exception to the requirement of exhaustion of grievance procedures when a union wrongfully refuses to bring an employee's grievance to arbitration. Because Simpkins never filed a grievance nor otherwise established that doing so would have been futile, *see* *Morales v. Southern Pacific Transp. Co.,* [*19] 894 F.2d 743, 745 (5th Cir., 1990), her case does not come within the exception.

III. CONCLUSION

For the foregoing reasons we affirm the district court's dismissal of count III of the complaint, reverse its dismissal of counts I & II, and remand the latter counts to the district court for further proceedings consistent with this opinion.

*It is so ordered.*

**CONCURBY:** WILLIAMS

**DISSENTBY:** WILLIAMS

**DISSENT:**

WILLIAMS, Circuit Judge, concurring and dissenting:

Because the equitable tolling issue requires further factual elaboration, I join in the judgment. Insofar as the Court's opinion concludes that the plaintiff raised a genuine issue of fact regarding the December 3, 1992 filing date, however, I think it disregards the ordinary standards for summary judgment.

The December 3, 1992 date first appeared in this case in papers filed by plaintiff herself (through her current counsel). Plaintiff never genuinely repudiated the date, and more importantly never contradicted it with "specific facts showing that there [was] a genuine issue for trial" on the point, as required by Rule 56(e) of the Federal Rules of Civil Procedure. See Anderson v. Liberty Lobby, 477 U.S. 242, 257, 91 L. Ed. 2d 202, [*20] 106 S. Ct. 2505 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). As plaintiff's June 24, 1993 date of filing with the EEOC was more than 180 days after December 3, 1992, summary judgment for defendant would have been in order but for the unresolved issue of equitable tolling.

Plaintiff's own filing with the EEOC (in the form of a letter by her current counsel) asserted that "it was not until December 3, 1992" that she "learned her status with WMATA" when she "received a copy of" WMATA's June 26, 1992 letter. Joint Appendix ("J.A.") 92. This letter, it is agreed, embodies the final decision of which she complains. In support of its contention that her EEOC filing had been untimely, defendant offered plaintiff's own filing.

The majority says that plaintiff has repudiated this date, ante at [8], but the documents it quotes make clear that she did not do so in so many words. In an affidavit filed in response to defendant's motion for summary judgment, she said that she did not "recall the exact date" of receiving the letter, J.A. 132, and in her "Statement of Material Facts About Which There are Genuine Disputes" she said [*21] that she filed her EEOC complaint "within 180 days of receiving the letter from WMATA," J.A. 100. The only specific fact she set forth was that she received the letter "in December 1992." J.A. 132, 172. What she offered, therefore, apart from the simple allegation of timely fit, was entirely consistent with the December 3 date: she did not recall the specific date, but the date was in December. She offered no other date, and certainly no reason to suppose that the true date was close enough to December 26th to satisfy the 180-day limit. How the district judge was supposed to intuit that this put the December 3 date in issue, much less that plaintiff had specific evidence with which to contradict it, I do not understand. In my view, therefore, the district court correctly decided that no genuine dispute existed about the issue.

Accordingly I respectfully dissent from so much of the opinion as concludes the contrary.

LEXSEE

**ANTONIO CARVALHO, Plaintiff, v. INTERNATIONAL BRIDGE & IRON CO., Defendant.**

**Civil Action No. 3:99V605(CFD)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

**2000 U.S. Dist. LEXIS 4419**

**February 25, 2000, Decided**

**DISPOSITION:** [*1] GRANTED IN PART AND DENIED IN PART.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff terminated employee sued in state court, and defendant former employer moved to dismiss after removing the case to federal court, in a case where plaintiff claimed defendant retaliated against him for filing workers' compensation claims and defendant claimed federal labor law preempted each one of plaintiff's six claims.

**OVERVIEW:** Plaintiff terminated employee sued defendant former employer alleging defendant unlawfully retaliated against him after he filed three workers' compensation claims. Defendant removed the case to federal court and said plaintiff's claims were all preempted by federal labor law. The court held generally that if plaintiff's claims involved interpretation of the collective bargaining agreement negotiated by plaintiff's union and defendant, then his claims under that law were preempted. The court then held that counts three and four--for breach of good faith and fair dealing, and breach of express contract--were preempted. The court held counts two and six--for wrongful discharge and negligent infliction of emotional distress--did not state claims. The court held the final two counts--count one for statutory discrimination and count five for intentional infliction of emotional distress--involved counts that were not preempted. The court ordered these last two claims remanded to the state court.

**OUTCOME:** Counts three and four dismissed on preemption grounds, counts two and six dismissed for failure to state claim, but dismissal of count one, based on statutory discrimination and count five, regarding intentional infliction of emotional distress, denied and case remanded since counts one and five pled only state law claims.

**CORE TERMS:** preempted, wrongful discharge, collective bargaining agreement, termination, intentional infliction of emotional distress, terminated, public policy, wrongful discharge claim, workers' compensation, motion to dismiss, infliction of emotional distress, fair dealing, supervisor, Connecticut Workers' Compensation Act, causes of action, common law claim, cause of action, grievance, violation of public policy, implied covenant, summary judgment, public policies, common law, discipline, retaliation, arbitration, redress, discriminated, discharged, breached

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN1] For the purposes of deciding a motion to dismiss, a court assumes as true the allegations of the complaint.

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN2] In deciding a motion to dismiss, a court must construe in favor of the pleader any well-pleaded allegations in the complaint. The issue on a motion to dismiss is not whether the nonmoving party will prevail, but whether he is entitled to offer evidence to support his claims. A court may dismiss the complaint only where it appears beyond doubt that the pleader can prove no set of facts in support of the claim which would entitle him to relief. In determining the adequacy of a claim under Fed. R. Civ. P. 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.

*Labor & Employment Law > Collective Bargaining & Labor Relations*

Page 1

2000 U.S. Dist. LEXIS 4419, *

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction*
[HN3] The Labor Management Relations Act of 1947, 29 U.S.C.S. § 185 (Act), provides a federal court with subject matter jurisdiction over suits concerning violations of collective bargaining agreements. That section reflects the intent of the United States Congress to create a uniform body of federal labor law to remedy such violations, rather than leaving redress to inconsistent, state-specific rules. As a result, disputes over terms in a collective bargaining agreement and the conduct subject to the agreement must be resolved according to the Act.

*Labor & Employment Law > Collective Bargaining & Labor Relations*
[HN4] When resolution of a state-law claim depends upon interpretation of a collective bargaining agreement, the claim must either be treated as a Labor Management Relations Act of 1947, 29 U.S.C.S. § 185 (Act), claim or dismissed as preempted by federal labor-contract law. However, if a state-law claim can be resolved without interpreting a collective bargaining agreement, the Act does not preempt the claim.

*Labor & Employment Law > Collective Bargaining & Labor Relations*
[HN5] The bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.

*Labor & Employment Law > Collective Bargaining & Labor Relations*
[HN6] If resolution of a plaintiff's claim hinges on the court's interpretation of the collective bargaining agreement, the claim is preempted regardless of whether it sounds in contract or tort. However, the Labor Management Relations Act, 29 U.S.C.S. § 185, should not be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law.

*Workers' Compensation & SSDI > Coverage > Actions Against Employers > Retaliatory Discharge*
[HN7] See Conn. Gen. Stat. § 31-290a(a) & (b).

*Workers' Compensation & SSDI > Coverage > Actions Against Employers > Intentional Misconduct*
[HN8] A plaintiff, to show a Conn. Gen. Stat. § 31-290a violation, must first show a prima facie case of discrimination. To establish the prima facie case, the plaintiff must present evidence that supports an inference

of unlawful discrimination. Once the plaintiff meets this burden, the burden shifts to the employer to rebut the inference of discrimination by producing evidence of a legitimate, nondiscriminatory reason for its actions. If the employer produces such an explanation, the inference is rebutted and the plaintiff must then prove his case in one of two ways: (1) directly, by persuading the fact finder that a discriminatory reason motivated the employer or, (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence.

*Labor & Employment Law > Collective Bargaining & Labor Relations*
*Labor & Employment Law > Employment Relationships > At-Will Employment*
*Labor & Employment Law > Wrongful Termination*
[HN9] An at-will employee may bring an action for wrongful discharge when the termination of his employment contravenes public policy and he would otherwise be without a remedy. Under Connecticut law, this cause of action is only available to workers who could be discharged at will. An individual whose employment is contractually protected by a just cause provision in a collective bargaining agreement is not an "at-will" employee and, therefore, may not bring an action for wrongful discharge.

*Contracts Law > Contract Interpretation > Good Faith & Fair Dealing*
[HN10] Implied in every contract, including employment contracts, is a covenant of good faith and fair dealing. The covenant is designed to provide job security to employees who at common law could be fired at will. Because unionized employees enjoy job security under their collective bargaining agreement, the Labor Management Relations Act of 1947, 29 U.S.C.S. § 185, preempts a cause of action for breach of the covenant of good faith and fair dealing.

*Labor & Employment Law > Collective Bargaining & Labor Relations*
*Contracts Law > Contract Conditions & Provisions > Express Conditions*
[HN11] Breach of express contract claims involving employment relationships governed by the terms of a collective bargaining agreement are preempted by the Labor Management Relations Act of 1947, 29 U.S.C.S. § 185.

*Torts > Intentional Torts > Intentional Infliction of Emotional Distress*
[HN12] Whether a claim for intentional infliction of emotional distress is preempted under the Labor

2000 U.S. Dist. LEXIS 4419, *

Management Relations Act of 1947, 29 U.S.C.S. §185, depends upon an examination of the alleged facts underlying the plaintiff's claim. The context of the alleged conduct is critical. If the conduct is alleged to have occurred during the course of the termination process, as part of appropriate employee discipline, or in connection with the grievance or arbitration proceedings concerning the employee, the claim is preempted because resolution of the claim would require a court to evaluate the conduct of the employer in light of the terms of the collective bargaining agreement.

*Torts > Intentional Torts > Intentional Infliction of Emotional Distress*
[HN13] If the conduct causing infliction of emotional distress is alleged to have occurred during the course of the termination process, as part of appropriate employee discipline, or in connection with the grievance or arbitration proceedings concerning the employee, the claim is preempted because resolution of the claim would require a court to evaluate the conduct of the employer in light of the terms of the collective bargaining agreement.

*Torts > Negligence > Duty > Negligent Infliction of Emotional Distress*
[HN14] In the employment context, the cause of action for negligent infliction of emotional distress only arises where the defendant engaged in unreasonable conduct in the termination process. In order to properly allege negligent infliction of emotional distress, a plaintiff must allege that his actual discharge was done in an inconsiderate, humiliating or embarrassing manner. Thus, in the employment context, in order for a plaintiff to sufficiently allege negligent infliction of emotional distress he must allege (1) his employer engaged in unreasonable conduct, that is, conduct which is inconsiderate or intended to humiliate or embarrass the employee and, (2) that the conduct was engaged in during the course of the employment termination process.

*Torts > Negligence > Duty > Negligent Infliction of Emotional Distress*
[HN15] Claims for negligent infliction of emotional distress can be dismissed under Fed. R. Civ. P. 12(b)(6) based upon the plaintiff's failure to plead unreasonable conduct in connection with allegedly wrongful employment termination.

**COUNSEL:** For ANTONIO CARVALHO, plaintiff: Ronald E. Lasky, Michael J. Melly, Ronald E. Lasky & Associates, New London, CT.

For INTERNATIONAL BRIDGE & IRON CO, defendant: Margaret J. Strange, Richard L. Bush,

Jackson, Lewis, Schnitzler & Krupman, Hartford, CT.

**JUDGES:** CHRISTOPHER F. DRONEY, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** CHRISTOPHER F. DRONEY

**OPINION:**

RULING ON DEFENDANT'S MOTION TO DISMISS

Introduction

The plaintiff in this action seeks damages under Conn.Gen.Stat. § 31-290a, which prohibits employers from retaliating against employees who exercise their rights under the Connecticut Workers' Compensation Act, and common law causes of action in a complaint originally filed in the Connecticut Superior Court. The defendant removed the action, asserting that this Court has original jurisdiction over the action pursuant to Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), codified at 29 U.S.C. § 185. The defendant claimed removal was proper because resolution of each of the six counts of the complaint required the interpretation of a collective bargaining agreement ("CBA").

Pending is the defendant's [*2] motion to dismiss or, alternatively, for summary judgment (doc. ## 10-1 & 10-2), in which the defendant argues, inter alia that the Court should dismiss every count of the complaint because the state law claims are preempted by Section 301 of the LMRA or because they do not state a claim upon which relief can be granted. The plaintiff argues that the state law claims are sufficiently pled and do not require the interpretation of the CBA and, therefore, are not preempted by Section 301 of the LMRA.

Background n1

> n1 The recited background facts are taken from the complaint. In ruling on the motion to dismiss, the Court does not treat the motion as one for summary judgment. See Krijn v. Pogue Simone Real Estate, Co., 896 F.2d 687, 689 (2d Cir. 1990); see also Maggette v. Dalsheim, 709 F.2d 800, 802 (2d Cir. 1983). The Court has only considered the complaint and the CBA in reaching a decision on the defendant's motion. See Argento v. Airborne Freight Corp., 933 F. Supp. 373, 376 fn. 2 (S.D.N.Y. 1996) (appropriate to consider the collective bargaining agreement in ruling on a Rule 12(b)(6) motion to dismiss raising issues of LMRA preemption); see also

Wilhelm v. Sunrise Northeast, Inc., 923 F. Supp. 330 (D.Conn. 1995) (court considered collective bargaining agreement in ruling on 12(b)(6) motion in which defendant argued plaintiff's common law claims, including breach of contract and wrongful discharge, were preempted by section 301 of the LMRA.)

[*3]

According to the complaint, n2 the plaintiff, Antonio Carvalho ("Carvalho"), began working for the defendant International Bridge & Iron Co. ("International") in October, 1996. Carvalho's employment with International was subject to the CBA entered into between International and Carvalho's union, the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers.

> n2 [HN1] For the purposes of deciding the motion to dismiss, the court assumes as true the allegations of the complaint. See Finnegan v. Campeau Corp., 915 F.2d 824, 826 (2d Cir. 1990).

Between December, 1996, and January, 1998, Carvalho suffered three job-related injuries. As a result of these injuries, Carvalho took time off from work and received treatment and benefits under the Connecticut Workers' Compensation Act (Conn.Gen.Stat. § 31-275, et seq.).Upon his return to work he was reassigned to light duty job assignments and was allowed to take paid time off from work to attend physical therapy sessions. [*4]

After returning to work following his last injury, Carvalho was assigned to cleaning restrooms and picking up litter outside International's place of business. Carvalho claims that, during this time, he was harassed, threatened, and verbally abused by two of his supervisors because of his prior workers' compensation claims.

On July 24, 1998, Carvalho was notified that his employment was terminated because he had not attended two physical therapy appointments which he had reported he attended. Carvalho was given no opportunity to explain, given his last paycheck, and ordered to leave. Carvalho denied that he missed the two appointments, provided International with explanations and asked that he be reinstated. International refused to reinstate Carvalho and this action followed.

In his complaint, Carvalho alleges that the conduct of International (and its supervisors) violated the Connecticut Workers' Compensation Act because it was taken in retaliation for his making claims under the Act

(count one), constituted tortious wrongful discharge in violation of public policy (count two), breached the implied covenant of good faith and fair dealing (count three), breached the CBA (count [*5] four), constituted intentional infliction of emotional distress (count five), and constituted negligent infliction of emotional distress (count six). As mentioned above, International claims that all six counts are preempted by section 301 of the LMRA, or, alternatively, fail to state a claim upon which relief can be granted.

Discussion

A. 12(b)(6) Standard

[HN2] In deciding a motion to dismiss, a court must construe in favor of the pleader any well-pleaded allegations in the complaint. See Finnegan v. Campeau Corp., 915 F.2d 824, 826 (2d Cir. 1990). The issue on a motion to dismiss is not whether the nonmoving party will prevail, but whether he is entitled to offer evidence to support his claims. United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer v. Rhodes, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974)). A court may dismiss the complaint only when "it appears beyond doubt that the pleader can prove no set of facts in support of the claim which would entitle him to relief." Yale New Haven Hosp., 727 F. Supp. at 786 (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). [*6] "In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

B. LMRA Preemption

[HN3] Section 301 of the LMRA provides this Court with subject matter jurisdiction over suits concerning violations of collective bargaining agreements. See Wilhelm v. Sunrise Northeast, Inc., 923 F. Supp. 330, 334 (D.Conn. 1995) (citing Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988)) (citation omitted); see also Baldracchi v. Pratt & Whitney Division, United Technologies Corp., 814 F.2d 102, 104 (2d Cir. 1987); Dittman v. Gen'l Motors Corp.-Delco Chassis Div., 941 F. Supp. 284, 288 (D.Conn. 1996); Anderson v. Coca Cola Bottling Co., 772 F. Supp. 77, 80 (D.Conn. 1991). Section 301 reflects the intent of Congress to create a uniform body of federal labor law to remedy such violations, [*7] rather than leaving redress to inconsistent, state-specific rules. See Wilhelm, 923 F. Supp. at 334 (citing Allis-Chalmers Corp. v. Lueck, 471

U.S. 202, 209-10, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (1984)); see also Dittman, 941 F. Supp. at 288; Anderson, 772 F. Supp. at 80. As a result, disputes over terms in a collective bargaining agreement and the conduct subject to the agreement must be resolved according to the LMRA. See Wilhelm, 923 F. Supp. at 334 (citing Lueck, 471 U.S. at 211); see also Anderson, 772 F. Supp. at 80.

" [HN4] When resolution of a state-law claim depends upon interpretation of a collective bargaining agreement, the claim must either be treated as a § 301 claim or dismissed as preempted by federal labor-contract law." Wilhelm, 923 F. Supp. at 334 (citing Allis-Chalmers, 471 U.S. at 221 and Lingle, 486 U.S. at 405-06); see also Foy v. Pratt & Whitney Group, 127 F.3d 229, 233 (2d Cir. 1997); Dittman, 941 F. Supp. at 288; Anderson, 772 F. Supp. at 80. [*8] However, if a state-law claim can be resolved without interpreting a collective bargaining agreement, section 301 does not preempt the claim. See Wilhelm, 923 F. Supp. at 334 (citing Lingle, 486 U.S. at 405-06); see also Dittman, 941 F. Supp. at 288; Anderson, 772 F. Supp. at 80. n3

n3 "However, [HN5] 'the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.'" Foy, 127 F.3d at 233 (quoting Livadas v. Bradshaw, 512 U.S. 107, 124, 129 L. Ed. 2d 93, 114 S. Ct. 2068 (1994)).

To determine whether Carvalho's claims are preempted by section 301, the Court must examine whether the claims are independent of any rights established by the collective bargaining agreement or whether the claims are intertwined with the terms of the collective bargaining agreement. See Wilhelm, 923 F. Supp. at 334 (citing [*9] Allis-Chalmers, 471 U.S. at 213). " [HN6] If resolution of the plaintiff's claim hinges on the court's interpretation of the collective bargaining agreement, the claim is preempted regardless of whether it sounds in contract or tort." Wilhelm, 923 F. Supp. at 334 (citing Dulay v. United Technologies Corporation, 1994 U.S. Dist. LEXIS 9051, 1994 WL 362149, *2 (D.Conn.) (Cabranes, C.J.). However, section 301 should not be read broadly to preempt nonnegotiable rights conferred on individual employees as a matter of state law. See Foy, 127 F.3d at 233 (quoting Livadas, 512 U.S. at 123).

With these standards in mind, the Court examines each of the plaintiff's counts to determine whether it is preempted by section 301 of the LMRA or, alternatively, subject to dismissal for failure to state a claim upon which relief can be granted.

C. The Six Counts of the Complaint

1. Violation of Conn.Gen.Stat. § 31-290a -- Count 1

In the first count of his complaint, Carvalho alleges that International retaliated against him for exercising his rights under the Connecticut Workers' Compensation Act in violation of [HN7] Conn.Gen.Stat. § 31-290a. [*10] n4 Specifically, Carvalho claims that he was subjected to various forms of harassment and ultimately fired because he had received workers' compensation benefits following each of his three job-related injuries.

n4 The statute is entitled "Discharge or discrimination prohibited. Right of action" and provides:

(a) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter.

(b) Any employee who is so discharged or discriminated against may either: (1) Bring a civil action in the superior court for the judicial district where the employer has its principal office for the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he would have otherwise been entitled if he had not been discriminated against or discharged and any other damages caused by such discrimination or discharge. The court may also award punitive damages. An employee who prevails in such a civil action shall be awarded reasonable attorney's fees and costs to be taxed by the court; or (2) file a complaint with the chairman of the Workers' Compensation Commission alleging violation of the provisions of subsection (a) of this section. Upon receipt of any such complaint, the chairman shall select a commissioner to hear the complaint, provided any commissioner who has previously rendered any decision concerning the claim shall be excluded. The hearing shall be held in the workers' compensation district where the employer has its

principal office. After the hearing, the commissioner shall send each party a written copy of his decision. The commissioner may award the employee the reinstatement of his previous job, payment of back wages and reestablishment of employee benefits to which he otherwise would have been eligible if he had not been discriminated against or discharged. Any employee who prevails in such a complaint shall be awarded reasonable attorney's fees. Any party aggrieved by the decision of the commissioner may appeal the decision to the Appellate Court.

[*11]

In Ford v. Blue Cross & Blue Shield of Connecticut, Inc., 216 Conn. 40, 578 A.2d 1054 (Conn. 1990), the Connecticut Supreme Court adopted the test set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), and its progeny as the appropriate analytical framework for evaluating a claimed violation of Conn.Gen.Stat. § 31-290a, where an employer is alleged to have discriminated against an employee for seeking workers' compensation benefits. Under Ford [HN8] the plaintiff must first show a prima facie case of discrimination. See Ford, 578 A.2d at 1060 (citing McDonnell Douglas, 411 U.S. at 802.) To establish the prima facie case, the plaintiff must present evidence that supports an inference of unlawful discrimination. See Ford, 578 A.2d at 1060 (citing Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)). Once the plaintiff meets this burden, the burden shifts to the employer to rebut the inference of discrimination by producing evidence of a legitimate, nondiscriminatory [*12] reason for its actions. See Ford, 578 A.2d at 1060 (citing McDonnell Douglas, 411 U.S. at 802). If the employer produces such an explanation, the inference is rebutted and the plaintiff must then prove his case in one of two ways: (1) directly, by persuading the fact finder that a discriminatory reason motivated the employer or, (2) indirectly, by showing that the employer's proffered explanation is "unworthy of credence." See Ford, 578 A.2d at 1060 (citing Burdine, 450 U.S. at 256).

Accordingly, in order for Carvalho to prevail on his first claim for relief he would first have to show a prima facie case of discrimination based upon his filing of workers' compensation claims. Then -- assuming International offered a legitimate non-discriminatory reason for its actions -- he would have to prove that a discriminatory reason motivated International or prove that International's proffered legitimate non-discriminatory reason for its employment action was pretextual.

International argues that under the analytical framework set forth in Ford, the Court will be required to interpret the terms of the CBA. Specifically, [*13] International argues, assuming Carvalho proves his prima facie case, its non-discriminatory reason for terminating his employment will be that it had just cause under the CBA to do so, including Carvalho's absences from the physical therapy appointments. In evaluating that reason, International maintains, the Court must look to and interpret the definition of "just cause" in the CBA.

In Baldracchi v. Pratt & Whitney Division, United Technologies Corp., 814 F.2d 102 (2d Cir. 1987), the Second Circuit rejected the same argument which International now makes, that is, in order for the defendant to establish that it terminated the employee for a legitimate nondiscriminatory reason, the court would have to interpret the "just cause" provision of the CBA. Id. at 105. n5 The Court held that the employer's liability for retaliatory discharge under section 31-290a would not be determined by reference to the CBA. Id. Rather, while the defendant would have to show that it had a legitimate non-discriminatory reason for firing Baldracchi, this would not require the employer to establish that the grounds for termination amounted to "just cause" under the CBA. Id. [*14] This is because an employee's rights under section 31-290a are independent of the CBA. Id. at 107.

n5 Although Baldracchi was decided prior to Ford, the Second Circuit evaluated the plaintiff's section 31-290a claim and the defendant's preemption argument in light of the burden shifting principles announced in McDonnell Douglas and eventually adopted in Ford.

In Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988), the U.S. Supreme Court reached the same conclusion when examining a Illinois plaintiffs common law claim of retaliatory discharge for filing a claim under that state's workers' compensation act. Id. at 409-410. In holding that the claim was not preempted by section 301 of the LMRA, the Court noted that "even if dispute resolution pursuant to the collective bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, [*15] as long as the state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes." Id. at 409-410.

In the instant case, the resolution of Carvalho's

section 31-290a claim will not require the interpretation of the CBA. His rights under the Connecticut Workers' Compensation Act are independent of his rights under the CBA. Enforcement of those rights, through section 31-290a, does not depend upon any particular interpretation of the CBA or its application. As was the case in Baldracchi and Lingle, some of the underlying facts relating to his termination that are relevant to the resolution of his section 31-290a claim may also be relevant to resolving a dispute concerning whether he was fired for "just cause" within the meaning of the CBA. However, that does not mean that the "just cause" provision of the CBA affects the section 31-290a claim.

Accordingly, the defendant's motion is denied as to count one of the complaint. n6

n6 The Connecticut Superior Court will determine, on remand, whether the conduct complained of constitutes a violation of Conn. Gen. Stat. § 31-290a.

[*16]

2. Tortious Wrongful Discharge -- Count 2

In count two of his complaint, Carvalho alleges that he was wrongfully discharged in violation of public policy. The public policies he claims were violated are the protection of the rights of workers not to be retaliated against for filing workers' compensation claims and federal and state laws prohibiting discrimination against disabled persons. International argues that resolution of this claim would also require the interpretation of the CBA because its employment termination process is set forth in a multi-step procedure contained in the CBA and, therefore, any claim that Carvalho was wrongfully terminated would have to comply with the procedure set forth in the CBA. International also argues that count two should be dismissed because Carvalho was not an "at will" employee at the time of his termination and, under Connecticut law, the tort of wrongful discharge is only available to "at will" employees. Finally, International argues that Carvalho is not entitled to bring a wrongful discharge claim in order to redress violations of the public policies he has identified because there are statutorily created causes of action available to [*17] him.

[HN9] An at-will employee may bring an action for wrongful discharge when the termination of his employment contravenes public policy **and** he would otherwise be without a remedy. See Burnham v. Karl and Gelb, P.C., 50 Conn. App. 385, 717 A.2d 811, 816 (Conn.App. 1998)(emphasis added); Atkins v. Bridgeport Hydraulic Co., 5 Conn. App. 643, 501 A.2d 1223, 1226

(Conn.App. 1985); Anderson v. Coca Cola Bottling Co., 772 F. Supp. at 82 (citing Magnan v. Anaconda Indus., Inc., 193 Conn. 558, 479 A.2d 781, 785 (Conn. 1984) and Sheets v. Teddy's Frosted Foods, Inc., 179 Conn. 471, 427 A.2d 385, 387 (Conn. 1980); see also Thomas v. St. Francis Hospital and Medical Center, 990 F. Supp. 81, 90 (D.Conn. 1998); Wilhelm v. Sunrise Northeast, Inc., 923 F. Supp. at 336). n7 Under Connecticut law, this cause of action is only available to workers who could be discharged at will. See Wilhelm, 923 F. Supp. at 336; (citing D'Ulisse-Cupo v. Bd. of Dir. of Notre Dame High School, 202 Conn. 206, 520 A.2d 217, 220 fn.1 (Conn. 1987)); see also Tomlinson v. Bd. of Ed., 226 Conn. 704, 629 A.2d 333, 347 fn. 18 (Conn. 1993); [*18] Appleton v. Bd. of Ed. of the Town of Stonington, 53 Conn. App. 252, 730 A.2d 88, 95 (Conn.App. 1999). An individual whose employment is contractually protected by a just cause provision in a collective bargaining agreement is not an "at-will" employee and, therefore, may not bring an action for wrongful discharge. See Wilhelm, 923 F. Supp. at 336 (citations omitted); see also Tomlinson, 629 A.2d at 347 fn. 18 (tenured teacher whose employment contract was governed by a state statute and a collective bargaining agreement was not an "at-will" employee and, therefore, could not assert a common law claim for wrongful discharge); Appleton, 730 A.2d at 95 (in considering a potential claim for wrongful discharge by a tenured teacher subject to the protections of a collective bargaining agreement, the court relied on Tomlinson and reached the same conclusion). But see Anderson, 772 F. Supp. at 83 (holding "not every claim of wrongful discharge is necessarily preempted by § 301" and suggesting an employee subject to the protections of a collective bargaining agreement could assert [*19] claim for wrongful termination).

n7 The cause of action is intended to place public policy limitations on the traditional employment at-will doctrine in an effort to balance the competing interests of employers and employees. Daley v. Aetna Life and Casualty Company, 249 Conn. 766, 734 A.2d 112, 131 (Conn. 1999) (citing Antinerella v. Rioux, 229 Conn. 479, 642 A.2d 699 (Conn. 1994)).

Equally fatal to Carvalho's wrongful discharge claim is the availability of statutory causes of action to vindicate the public policies he claims were violated by International when it terminated his employment. Because the Connecticut Workers' Compensation Act, the Americans with Disabilities Act, and the Connecticut Fair Employment Practices Act each provide retaliation causes of action for this situation, a common law wrongful discharge claim on the same basis is not

available. A number of Connecticut decisions support this view.

In Burnham v. Karl and Gelb, P.C., 50 Conn. App. 385, 717 A.2d 811, 816 (Conn.App. 1998), [*20] for example, the plaintiff alleged that her employer had terminated her employment because she had reported unsafe workplace conditions to the Occupational Safety and Health Administration ("OSHA"). She brought an action against her employer alleging, inter alia wrongful discharge in violation of public policy. The court in Burnham held that the tort of wrongful discharge was not available to the plaintiff because the Occupational Safety and Health Act ("the Act") provided a private cause of action for retaliation for reporting unsafe work conditions to OSHA. Burnham, 717 A.2d at 816. The Burnham court concluded that because the Act provided a private cause of action which enabled aggrieved employees to vindicate the important public policy of ensuring that they would not be terminated in retaliation for reporting work place safety concerns, there was no need for a separate common law tort action -- such as wrongful discharge -- to protect that same public policy. Id.

In Atkins v. Bridgeport Hydraulic Co., 5 Conn. App. 643, 501 A.2d 1223, 1226 (Conn.App. 1985), the plaintiff alleged that his employer had terminated him because of his [*21] race. The plaintiff asserted claims for wrongful discharge and violation of the Connecticut Fair Employment Practices Act. With respect to the common law wrongful discharge claim, the plaintiff alleged that the defendant's conduct violated Connecticut's public policy regarding employment practices. Id. However, the Atkins court affirmed the trial court decision granting summary judgment in favor of the employer and held that an employee may not bring a common law claim for wrongful discharge unless he would otherwise be without a remedy and permitting the discharge to go unredressed would leave a public policy unvindicated. Id.

The Connecticut Superior Court in Cowan v. Warner-Lambert Co., 1994 Conn. Super. LEXIS 2841, No. CV90032564S, 1994 WL 645965 (Conn. Super. Ct. Nov. 4, 1994), reached the same conclusion where the plaintiff -- like Mr. Carvalho here -- asserted a claim for violation of Conn.Gen. Stat. § 31-290a and a common law cause of action for wrongful discharge in violation of public policy. The court concluded that because Conn.Gen.Stat. § 31-290a provided a means to vindicate the public policy of deterring employer retaliation against employees who exercise their rights under the [*22] Connecticut Workers' Compensation Act, the plaintiff was precluded from also asserting a common law claim for wrongful discharge in violation of public policy. Id.; see also Pucci v. American-Republican, 1994 Conn. Super. LEXIS 1319, No. 118491, 1994 WL 235316, at *3

(Conn. Super. Ct. 1994) (plaintiff asserted claims for violation of Conn.Gen.Stat. § 31-290a and wrongful discharge; court reached same conclusion as Cowan and dismissed wrongful discharge claim); Flores v. Santoro, 1991 Conn. Super. LEXIS 3040, No. CV90-0442419S, 1991 WL 273309, at *1 (Conn. Super. Ct. Nov. 26, 1991) (plaintiff asserted claims for violation of Conn. Gen. Stat. § 31-290a and wrongful discharge; court reached same conclusion as in Cowan and Pucci); Thomas v. St. Francis Hosp. & Med. Ctr., 990 F. Supp. at 90 (state and federal anti-discrimination laws provided remedy for conduct complained of and, therefore, wrongful discharge claim barred); Hancock v. The Stop & Shop Co., Inc., 1998 Conn. Super. LEXIS 3744, No. CR9704061S, 1998 WL 951019, at *2 (CFEPA provided remedy for plaintiff's discrimination claim; therefore, wrongful discharge claim was barred); Friel v. St. Francis Hosp., 1997 U.S. Dist. LEXIS 17430, No. CIV.3:97-803(DJS), 1997 WL 694729, at *2-3 (D.Conn. Oct. 31, 1997) (plaintiff [*23] brought action under Title VII, ADA, and CFEPA, as well as a common law claim for wrongful discharge based on public policy reflected in those statutes; wrongful discharge claim dismissed because the statutes provided redress for the public policy violation); Brosler v. Food Automation-Service Techniques, Inc., 1997 U.S. Dist. LEXIS 18092, No. 3:96-2345(DJS), 1997 WL 711438, at *3 (D.Conn. Aug. 25, 1997) (same result where plaintiff brought action under Title VII and CFEPA, as well as a common law claim for wrongful discharge based on public policy reflected in those statutes); Dais v. Laidlaw Transit, Inc., 1996 Conn. Super. LEXIS 850, No. CV950146079S, 1996 WL 176370, at *2 (Conn. Super. Ct. March 29, 1996) (plaintiff brought claim for violation of Conn.Gen.Stat. § 31-51t [relating to employee drug testing] and wrongful discharge based on violation of the public policy reflected in that statute; wrongful discharge claim dismissed because the statute provided redress for the public policy violation); Hernandez v. Standard Mattress Co., 1992 Conn. Super. LEXIS 2377, No. CV910397408S, 1992 WL 205168, at *3 (Conn. Super. Ct. Aug. 12, 1992) (plaintiff brought Title VII claim and various common law causes of action, including wrongful discharge; court dismissed [*24] wrongful discharge claim because racial discrimination complained of was redressed through suit under Title VII and CFEPA). But see Shearn v. Airborne Freight Corp., 1994 Conn. Super. LEXIS 1216, No. CV930134795, 1994 WL 198099, at *2 (Conn. Super. Ct. May 12, 1994) (court permitted plaintiff to bring claims for violation of Conn.Gen.Stat. § 31-290a and wrongful discharge); Spagnolo v. Macristy Industries, Inc., 1993 Conn. Super. LEXIS 2780, No. CV92-0451874S, 1993 WL 452243 (Conn. Super. Ct. Oct. 1, 1993) (same).

In the instant case, Carvalho's common law claim for wrongful discharge is based upon the allegation that his employment was terminated in violation of public policy.

The public policies he asserts were violated are the protection of the rights of workers not to be retaliated against for filing workers' compensation claims and federal and state laws prohibiting discrimination against disabled persons. However, violations of these public policies can be redressed through existing statutory causes of action contained in the Connecticut Workers' Compensation Act, the Americans with Disabilities Act, and the Connecticut Fair Employment Practices Act. Because Carvalho has available to him statutory causes of action to redress the [*25] alleged public policy violations, there is no need for a common law cause of action to vindicate the same public policies; therefore, his wrongful discharge claim is barred.

Accordingly, the defendant's motion is granted as to count two.

### 3. Breach of the Implied Covenant of Good Faith and Fair Dealing -- Count 3

In count three of the complaint, Carvalho alleges that by terminating his employment, International breached the implied covenant of good faith and fair dealing because his termination was in violation of public policy. Carvalho alleges that the relevant public policies are the ones described in count two: protecting the rights of workers not to be retaliated against for filing workers' compensation claims and prohibiting discrimination against disabled persons. International makes the same arguments with respect to dismissal of this count as for count two.

[HN10] Implied in every contract, including employment contracts, is a covenant of good faith and fair dealing. See Magnan, 193 Conn. 558, 479 A.2d 781, 787 (Conn. at 1984). However, "the covenant is designed to provide job security to employees who at common law could be fired at will." Anderson v. Coca Cola Bottling Co., 772 F. Supp. 77, 82 (D.Conn. 1991) [*26] (citing Young v. Anthony's Fish Grottos, Inc., 830 F.2d 993, 999 (9th Cir. 1987)); see also Knight v. Southern New England Telephone Corp., 1998 U.S. Dist. LEXIS 15952, No. 3:97CV1159(WWE), 1998 WL 696014, at *5 (D.Conn. Sept. 18, 1998). The district court in Anderson held that because unionized employees enjoy job security under their collective bargaining agreement, § 301 preempts a cause of action for breach of the covenant of good faith and fair dealing. See Anderson, 772 F. Supp. at 82 (citations omitted); see also Knight, 1998 WL 696014, at *5; Jones v. Carolina Freight Carriers Corp., 1997 Conn. Super. LEXIS 3484, No. CV970570128, 1997 WL 808634, at *4 (Conn. Super. Ct. Dec. 24, 1997).

In Jones v. Carolina Freight Carriers Corp., supra, the plaintiff, who was subject to a collective bargaining

agreement, alleged that his employment with the defendant had been terminated in retaliation for making claims under the Connecticut Workers' Compensation Act. He brought an action alleging, inter alia, breach of the implied covenant of good faith and fair dealing. n8 See Jones, 1997 WL 808634, at *1-2. Relying on Anderson, the Jones court held that section 301 of [*27] the LMRA preempts claims for breach of the implied covenant of good faith and fair dealing where the plaintiff's employment is governed by a collective bargaining agreement. See Jones, 1997 WL 808634, at *4.

n8 The action had originally been filed in this court. However, the District Court granted the defendant's motion for summary judgment on several counts of the complaint and remanded the remaining counts to state court. The plaintiff had voluntarily withdrawn his claim for breach of the implied covenant of good faith and fair dealing prior to that ruling and, following remand, renewed that claim.

In the instant case, Carvalho alleges in his complaint that the terms of his employment, including the procedures by which his employment could be terminated and the specified reasons warranting such termination, were governed by the CBA. As in Anderson and Jones, where the plaintiffs were subject to collective bargaining agreements and, therefore, were barred from asserting claims for breach of the [*28] implied covenant of good faith and fair dealing, so too is Mr. Carvalho here. As such, his claim for breach of the implied covenant of good faith and fair dealing is preempted by § 301.

Accordingly, the defendant's motion is granted as to count three of the complaint.

### 4. Breach of Express Contract -- Count 4

In count four of his complaint, Carvalho alleges that International breached the CBA by terminating his employment without just cause. International argues that this count of the complaint is preempted by § 301 because the contract which Carvalho alleges it breached is the CBA.

[HN11] Breach of express contract claims involving employment relationships governed by the terms of a collective bargaining agreement are preempted by section 301 of the LMRA. See Jones v. Carolina Freight Carriers Corp., 1997 Conn. Super. LEXIS 3484, No. CV970570128, 1997 WL 808634, at *3 (Conn. Super. Ct. Dec. 24, 1997). The source of such express contractual rights here is the collective bargaining agreement agreed

to by International and the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers. See Wilhelm, 923 F. Supp. at 335; see also Jones, 1997 WL 808634, at *4 (plaintiff's [*29] right to maintain place on seniority list was guaranteed by collective bargaining agreement, therefore, his breach of contract claim was preempted by section 301).

The CBA included a provision that an employee, such as Carvalho, could not be terminated without just cause and set forth a procedure for bringing grievances against the employer. See Wilhelm, 923 F. Supp. at 335; see also Jones, 1997 WL 808634, at *4. Resolution of the merits of Carvalho's breach of contract claim would necessarily require the Court to interpret the terms and provisions of the agreement upon which the employment relationship was founded, the CBA. See Wilhelm, 923 F. Supp. at 335; see also Anderson, 772 F. Supp. at 81; Jones, 1997 WL 808634, at *4. Carvalho's claim cannot be resolved without determining just cause under the CBA. Anderson, 772 F. Supp. at 81. Therefore, Carvalho's breach of contract claim is preempted by § 301. Id.

Accordingly, the defendant's motion is granted as to count four of the complaint. n9

n9 The CBA here contains arbitration provisions with which Carvalho was required to comply in the event that he contested the results of his grievance proceedings. It is well settled that, before bringing an action such as this one, Carvalho must exhaust these arbitration procedures and failure to do so warrants dismissal of the action. See Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 563, 47 L. Ed. 2d 231, 96 S. Ct. 1048 (1976). See also Dougherty v. American Telephone and Telegraph Co., 902 F.2d 201, 203 (2d Cir. 1990).

[*30]

5. Intentional Infliction of Emotional Distress -- Count 5

Carvalho alleges in count five that International intentionally inflicted emotional distress on him through the alleged verbal abuse, threats, the employment actions by his supervisors, and, ultimately, his termination. International argues that the claim is preempted by section 301 of the LMRA and the alleged conduct was not extreme and outrageous.

[HN12] Whether a claim for intentional infliction of emotional distress is preempted under section 301 of the LMRA depends upon an examination of the alleged facts

underlying the plaintiff's claim. See Ellis v. Lloyd, 838 F. Supp. 704, 708-09 (D.Conn.1993); see also Brandmeyer v. Brescome Barton, Inc., 1999 Conn. Super. LEXIS 1739, No. C 980148932, 1999 WL 391097, at *4 (Conn. Super. Ct. June 1, 1999). The context of the alleged conduct is critical.

[HN13] If the conduct is alleged to have occurred during the course of the termination process, as part of appropriate employee discipline, or in connection with the grievance or arbitration proceedings concerning the employee, the claim is preempted because resolution of the claim would require the Court to evaluate the conduct of the employer in light [*31] of the terms of the CBA. See Kellman v. Yale-New Haven Hospital, 64 F. Supp. 2d 35, 36-37 (D.Conn. 1999) (employee's claim for intentional infliction of emotional distress based on his termination preempted); Ellis v. Lloyd, 838 F. Supp. at 707-08 (intentional infliction of emotional distress claim preempted when based upon employment grievances filed against the plaintiff); Anderson v. Coca Cola Bottling Co., 772 F. Supp. 77, 82 (D.Conn 1991) (employee's claim for intentional infliction of emotional distress based on issuance of written warnings by his supervisor preempted); Petrucelli v. Cytec Industries, Inc., 1996 U.S. Dist. LEXIS 22498, Civ.No. 3:95CV1055(AHN), 1996 WL 684401, at *5 (D.Conn. May 23, 1996) (employee's claim for intentional infliction of emotional distress based on circumstances surrounding his promotions, layoffs, and grievances/arbitrations preempted).

If, however, the conduct is alleged to have occurred in a setting unrelated to the termination process, as part of appropriate employee discipline, or during grievance or arbitration proceedings, the claim is not preempted by section 301 of the LMRA. See Vorvis v. Southern New England Telephone Co., 821 F. Supp. 851, 853-55 (D.Conn.1993) [*32] (employee's intentional infliction of emotional distress claim not preempted where supervisor mistreated the plaintiff through verbal abuse, false statements about her job performance and unfair discipline); Claps v. Moliterno Stone Sales, Inc., 819 F. Supp. 141, 154 (D.Conn.1993) (employee's intentional infliction of emotional distress claim not preempted where supervisor and superintendent engaged in a series of demeaning and abusive practices); Brandmeyer v. Brescome Barton, Inc., 1999 Conn. Super. LEXIS 1739, No. C 980148932, 1999 WL 391097, at *4 (Conn. Super. Ct. June 1, 1999) (intentional infliction of emotional distress claim based upon abusive practices of supervisors and unfair discipline not preempted).

Carvalho alleges intentional infliction of emotional distress based, in part, upon harassing, threatening, and abusive conduct by his supervisors unrelated to any incident of appropriate employee discipline or the

termination of his employment. Based on these allegations, resolution of his claim of intentional infliction of emotional distress may not require the interpretation of the terms of the CBA. As such, his claim for intentional infliction of emotional distress is not preempted [*33] by section 301 of the LMRA. n10

> n10 Of course, to the extent that his claim for intentional infliction of emotional distress is based upon the termination of his employment or his grievance or any incident of employee discipline, the claim is preempted.

Accordingly, the defendant's motion is denied as to count five of the complaint. n11

> n11 The Connecticut Superior Court will determine, on remand, whether the conduct complained of constitutes rises to the level of intentional infliction of emotional distress.

### 6. Negligent Infliction of Emotional Distress -- Count 6

[HN14] In the employment context, the cause of action for negligent infliction of emotional distress only arises where the defendant engaged in unreasonable conduct **in the termination process.** Parsons v. United Technologies Corp., Sikorsky Aircraft Div., 243 Conn. 66, 700 A.2d 655, 667 (Conn. 1997); [*34] see also Pavliscak, 48 Conn. App. 580, 711 A.2d 747 at 755; Belanger v. Commerce Clearing House, 25 F. Supp. 2d 83, 84 (D.Conn. 1998); Cooper v. Dick's Clothing and Sporting Goods 25 F. Supp. 2d 59, 61 (D.Conn. 1998); Cowen v. Federal Express Corp., 25 F. Supp. 2d 33, 39 (D.Conn. 1998); Thomas v. St. Francis Hosp. & Med. Ctr., 990 F. Supp. at 91 (emphasis added); Rosenberg v. Meriden Housing Authority, 1999 Conn. Super. LEXIS 2971, No. CV950377376, 1999 WL 1034611, at *9-10 (Conn. Super. Ct. Oct. 29, 1999). But see Karanda v. Pratt & Whitney Aircraft, 1999 Conn. Super. LEXIS 1244, No. CV-98-582025S, 1999 WL 329703, at *5 (Conn. Super. Ct. May 10, 1999), criticized by Dorlette v. Harborside Healthcare Corp., 1999 Conn. Super. LEXIS 2165, No. CV 990266417, 1999 WL 439915, at *3 (Conn. Super. Ct. Aug. 9, 1999). In order to properly allege negligent infliction of emotional distress, Carvalho must allege that his "actual discharge was done in an inconsiderate, humiliating or embarrassing manner". See Belanger, 25 F. Supp. 2d at 84-85; Cooper, 25 F. Supp. 2d at 61; see also Huff, 10 F. Supp. 2d 117 at 124. Thus, in the employment [*35] context, in order for a plaintiff to sufficiently allege negligent infliction of emotional

distress he must allege (1) his employer engaged in unreasonable conduct, that is, conduct which is inconsiderate or intended to humiliate or embarrass the employee and, (2) that the conduct was engaged in during the course of the employment termination process. n12

> n12 [HN15] Claims for negligent infliction of emotional distress have been dismissed under Fed.R.Civ.P. 12(b)(6) based upon the plaintiff's failure to plead unreasonable conduct in connection with allegedly wrongful employment termination. See Belanger, 25 F. Supp. 2d at 84-85; Cooper, 25 F. Supp. 2d at 61.

In Cooper v. Dick's Clothing and Sporting Goods, supra, for example, the plaintiff employee was trying on golf shoes when he received an emergency telephone call in which he was informed that his father was gravely ill. The plaintiff rushed out of the store and, in the process, neglected to take off the shoes. [*36] Two and a half days later, he returned with the shoes, intending to purchase them. During his shift, however, the store employees confronted the plaintiff, accused him of theft, and he was terminated. Id. at 60. The plaintiff asserted, inter alia a claim for negligent infliction of emotional distress. Recognizing that the termination of an employee, even if unjustified, is not sufficient by itself to sustain a claim for negligent infliction of emotional distress, the Court granted the defendant's motion to dismiss the claim because the plaintiff had failed to allege sufficiently egregious conduct engaged in by the defendant's agents during the process of terminating his employment. Id. at 61.

Similarly, in Thomas v. St. Francis Hosp. & Med. Ctr., supra, the plaintiff employee alleged that the defendant hospital discriminated against her on the basis of her race, religion, marital status, and gender. She claimed that the discrimination lead to her receiving verbal and written job performance warnings, a suspension, and, eventually, termination of her employment. 990 F. Supp. at 91. She also claimed that her supervisor [*37] made two comments to her relating to her race, marital status, and gender, characterizing the plaintiff as a black, unwed mother. Id. at 92. The plaintiff brought suit claiming, inter alia, negligent infliction of emotional distress. The Court dismissed the negligent infliction of emotional distress claim on the basis that the plaintiff had not alleged any unreasonable conduct in the termination process itself Id.

As in Cooper and Thomas, Carvalho has not alleged facts which demonstrate that International humiliated him or embarrassed him when it terminated his employment. Carvalho alleges that he was informed of the termination

of his employment in a memorandum from International, given his last paycheck, and told to leave. The alleged conduct of International during termination is not sufficient to sustain this cause of action.

As to Carvalho's allegations that two of his supervisors subjected him to harassment, berated him, threatened him, "hissed" at him, made gestures towards him, assigned him to work details which violated the physical restrictions placed on him by his doctor, and, on one occasion, ordered him to pick up papers from a deep [*38] puddle without foot coverings, these are not alleged to have occurred in the termination process and fail on that basis. See Parsons, 700 A.2d at 667; see also Pavliscak, 711 A.2d at 755; Belanger, 25 F. Supp. 2d at 84; Cooper, 25 F. Supp. 2d at 61; Cowen, 25 F. Supp. 2d at 39; Thomas, 990 F. Supp. at 91. But see Karanda v. Pratt & Whitney Aircraft, 1999 Conn. Super. LEXIS 1244, No. CV-98-582025S, 1999 WL 329703, at *5 (Conn. Super. Ct. May 10, 1999) (concluding that Parsons did not foreclose an action against an employer for negligent infliction of emotional distress outside of the termination process), criticized by Dorlette v. Harborside Healthcare Corp., 1999 Conn. Super. LEXIS 2165, No. CV 990266417, 1999 WL 639915, at *3 (Conn. Super. Ct. Aug. 9, 1999).

Therefore, for these reasons, the defendant's motion is granted as to count six of the complaint. Because this count is dismissed on the basis that it does not state a claim upon which relief can be granted, the Court does not address the separate basis for dismissal: LMRA section 301 preemption.

Conclusion

Based on the foregoing, the defendant's [*39] motion to dismiss or, alternatively, for summary judgment (doc. ## 10-1 & 10-2) is **GRANTED IN PART AND DENIED IN PART.** Counts two, three, four, and six are dismissed.

28 U.S.C. § 1447(c) provides in relevant part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." The remaining counts of the complaint alleges a violation of Conn.Gen.Stat. § 31-290a (count one) and a common law cause of action for intentional infliction of emotional distress (count five). The Court has ruled that these claims are not preempted by § 301 of the LMRA. There is no apparent federal question jurisdiction as to those counts. The complaint also alleges that both of the parties are citizens of Connecticut. Therefore, there is no apparent diversity jurisdiction. Accordingly, the Court lacks subject matter jurisdiction over the remainder of this action and it is hereby ordered that this case be remanded to the Connecticut Superior Court for the Judicial District of Hartford/New Britain at New Britain. The Clerk is ordered to close this case.

SO ORDERED this 25th day of February, 2000, [*40] at Hartford, Connecticut.

CHRISTOPHER F. DRONEY

UNITED STATES DISTRICT JUDGE

JUDGMENT

This action having come on for consideration of the defendant's motion to dismiss or in the alternative for summary judgment, before the Honorable Christopher F. Droney, United States District Judge, and

The court having considered the full record of the case including applicable principles of law, and having filed a Ruling, granting the motion to dismiss and denying the motion for summary judgment, it is therefore,

ORDERED, ADJUDGED and DECREED that the judgment be and is hereby entered in favor of the defendant.

Dated at Hartford, Connecticut, this 25th day of February, 2000.

FOCUS - 3 of 19 DOCUMENTS

**JOYCE SHELTON, Plaintiff, v. GORDON R. ENGLAND, Secretary of the Navy, Defendant.**

**Civil Action No. 04-1292 (RBW)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*2005 U.S. Dist. LEXIS 36126*

**August 3, 2005, Decided**
**August 3, 2005, Filed**

**COUNSEL:** **[*1]** For JOYCE SHELTON, Plaintiff: Wayne Marcus Scriven, SCRIVEN & ASSOCIATES, Fredericksburg, VA.

For GORDON R. ENGLAND, Defendant: Gary Philip-Matthew Corn, U.S. ATTORNEY'S OFFICE, Washington, DC.

**JUDGES:** REGGIE B. WALTON, United States District Judge.

**OPINIONBY:** REGGIE B. WALTON

**OPINION:**

### MEMORANDUM OPINION

The plaintiff has brought this action alleging a violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq.* Complaint ("Compl.") PP 26-30. The defendant seeks dismissal of this action pursuant to *Federal Rule of Civil Procedure 12(b)(5)* for insufficient service of process and *Rule 12(b)(6)* for failure to state a claim upon which relief can be granted. Currently before the Court is the Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Def.'s Mem."); the Plaintiff's Memorandum of Points and Authorities in Support of Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n"); and the Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Def.'s Reply"). For the reasons set forth below, this Court grants in part and denies in part the defendant's **[*2]** dismissal motion.

### I. Background

In 1992, the plaintiff, an African American woman, began her career as a Budget Analyst at the Department of the Navy's ("Navy") Naval Sea Systems Command facility in Washington, D.C. Compl. P 5. In this position, and during the times relevant to this case, the plaintiff was supervised by Ms. Chaikowski. n1 Id. P 7.

n1 No where in the record is Ms. Chaikowski's first name indicated.

In November 1998, one of the plaintiff's coworkers, Carolyn Bolling, filed an Equal Employment Opportunity ("EEO") complaint against her supervisor, Chaikowski, alleging sexual harassment. Id. P 8. According to the plaintiff, following the filing of the EEO complaint and Bolling's subsequent interview by the EEO officer investigating the complaint, Chaikowski "became hostile and aggressive" towards Bolling. Id. PP 8-9. In January 1999, the plaintiff was interviewed regarding Bolling's EEO complaint. Id. P 9. Following the plaintiff's interview, Chaikowski allegedly observed the **[*3]** plaintiff talking with Bolling, which led Chaikowski to "angrily shout[]" for the plaintiff to come into her office. Id. P 10. Once in Chaikowski's office, Chaikowski, in a "very angry and loud voice," ordered the plaintiff to avoid any interaction with Bolling because of the pending EEO complaint. Id. PP 10-11.

Case 1:05-cv-02299-JDB     Document 9-2     Filed 01/24/2006     Page 44 of 48

Page 2
2005 U.S. Dist. LEXIS 36126, *

In February 1999, the plaintiff received her evaluation under the Performance Appraisal Review System ("PARS"). Id. P 14; Pl.'s Mem. at 2. The PARS evaluation is "based upon a five-level summary rating system." Pl.'s Mem, Ex. 1 at 9. Under this system, a rating of "Level 1" is the lowest possible rating, while a rating of "Level 5" is the highest. Id. The plaintiff had received a rating of "Level 5" for the 1997-1998 rating period. Id. P 14. In her February 1999 evaluation, however, the plaintiff received an overall rating of "Level 4," despite the fact that her work performance during the evaluation period was allegedly consistent with her work performance during the earlier evaluation period. Compl. P 14. The plaintiff posits that this reduced rating was in retaliation for the plaintiff's apparent support of Bolling's EEO complaint. Id. P 2. To **[*4]** further support this conclusion, the plaintiff notes that Bolling's February 1999 evaluation was also lowered one level from her earlier evaluation-from a Level 4 to a Level 3-despite a purported consistent work performance for both periods. Id. P 13. Moreover, the plaintiff directs the Court to a similarly situated coworker, Betty Scoggins, a Caucasian woman, who was also interviewed by the EEO investigator. Id. PP 15-16. According to the plaintiff, Scoggins's rating on her February 1999 evaluation was a Level 4, an increase from the Level 3 rating she had received the year before. Id. P 17.

## II. Standards of Review

Under *Federal Rule of Civil Procedure 12(b)(5)*, a Court may dismiss a complaint for ineffective service of process if the plaintiff fails to establish that she properly effectuated service pursuant to *Rule (4)*. *Light v. Wolf, 259 U.S. App. D.C. 442, 816 F.2d 746, 751 (D.C. Cir. 1987)*. *Rule 4(i)* governs service of process against the United States, its agencies, corporations, officers and employees. Under *Rule 4(i)(1)*, a plaintiff has properly effectuated service on the United States by delivering a copy of the summons **[*5]** and the complaint to (1) the United States attorney for the district in which the action is brought and (2) the Attorney General of the United States. *Fed. R. Civ. P. 4(i)(1)(A)-(B)*. In addition, a plaintiff bringing an action against an officer or employee of the United States in an official capacity must also send "a copy of the summons and complaint by registered or certified mail to the officer, employee, agency, or corporation." *Fed. R. Civ. P. 4(i)(2)(A)*. "It is commonly understood that the rule requires both the agency be served under *Rule 4(i)(2)(A)* and the United States be served under *Rule 4(i)(1)*." *Shore v. Henderson, 168 F. Supp. 2d 428, 430 (D.D.C. 2001)* (citations omitted). *Rule 4(m)* mandates that services of the summons and complaint be effectuated within 120 days after the filing of the complaint. *Fed. R. Civ. P. 4(m)*. If a Court determines that this time limit has not been satisfied it "shall dismiss the action without prejudice." Id. However, if good cause is shown, a Court shall extend the time for service. Id.

On **[*6]** a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to *Rule 12(b)(6)*, this Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the alleged facts. *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*; *Barr v. Clinton, 361 U.S. App. D.C. 472, 370 F.3d 1196, 1199 (D.C. Cir. 2004)* (citing *Kowal v. MCI Communications Corp., 305 U.S. App. D.C. 60, 16 F.3d 1271, 1276 (D.C. Cir. 1994)*). However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. *Kowal, 16 F.3d at 1276*. In deciding whether to dismiss a claim under *Rule 12(b)(6)*, the Court can only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference into the complaint, and matters about which the Court may take judicial notice. *EEOC v. St. Francis Xavier Parochial Sch., 326 U.S. App. D.C. 67, 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997)*. A court may dismiss a claim pursuant to *Rule 12(b)(6)* only if the defendant can demonstrate "beyond doubt **[*7]** that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley, 355 U.S. at 45-46*.

## III. Legal Analysis

The defendant contends that this action should be dismissed (1) under *Rule 12(b)(5)* because the plaintiff failed to properly serve the Secretary of the Navy within the 120-day time limit prescribed by *Rule 4(m)* and (2) under *Rule 12(b)(6)* because the plaintiff has failed to state a claim upon which relief can be granted. Def.s' Mot. at 1. The Court will address each argument separately.

## (A) Dismissal Under Rule 12(b)(5)

The defendant first seeks dismissal under *Rule 12(b)(5)* because the plaintiff has failed to serve the Secretary of the Navy pursuant to *Rule 4(i)(2)(A)* within the 120 day period prescribed by *Rule 4(m)*. Def.'s Mem. at 4. Under *Rule 4(i)(3)(A)*, a "court shall allow a reasonable time to serve process under *Rule 4(i)* for the purposes of curing the failure to serve . . . all persons required to be served in an action governed by *Rule 4(i)(2)(A)*, if the plaintiff has served either the United States attorney, or the Attorney General of the United States." *Fed. R. Civ. P. 4(i)(3)(A)* **[*8]** . Here, the par-

Case 1:05-cv-02299-JDB     Document 9-2     Filed 01/24/2006     Page 45 of 48

Page 3
2005 U.S. Dist. LEXIS 36126, *

ties do not dispute that the United States Attorney and the Attorney General of the Untied States were served, thus, the only question remaining is whether there has been compliance with *Rule 4(i)(2)(A)*. See Pl.'s Reply at 3. However, even assuming that the plaintiff failed to comply with *Rule 4(i)(2)(A), Rule 4(i)(3)(A)* mandates that this Court provide a reasonable time for a plaintiff to cure such a defect. The defect here is that the Secretary of the Navy was not served within the 120-day time limit. Def.'s Mem. at 4-5. However, the defendant concedes that the Secretary of the Navy has now been served. Def.'s Reply at 3 n.1. Accordingly, the Court must deny the defendant's motion to dismiss pursuant to *Rule 12(b)(5)* because this Court finds that service was effectuated within a reasonable time following notice of the *Rule 4(i)(3)(A)* defect. See *Boucher v. Henderson, 2005 U.S. Dist. LEXIS 11781, 2005 WL 1183148 (S.D. Ind. May 18, 2005)*.

**(B) Dismissal Under *Rule 12(b)(6)***

The defendant seeks dismissal under *Rule 12(b)(6)* because he asserts that the plaintiff cannot establish a prima facie case of discrimination or retaliation under Title VII. Def.'s Mem. at 5. Specifically, **[*9]** the defendant opines that the February 1999 evaluation is not an adverse employment action, and thus the plaintiff has failed to establish a prima facie case of employment discrimination. Id. at 7.

To prove a claim of discrimination under Title VII, the plaintiff can present direct evidence of discrimination or in the absence of direct evidence, as is the situation here, the plaintiff can rely on the McDonnell Douglas burden shifting framework. *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)*. Under the McDonnell Douglas framework, the plaintiff must first establish a prima facie case of discrimination. *Id. at 802*. A prima facie case of race or gender discrimination is established if the plaintiff demonstrates "that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody, 339 U.S. App. D.C. 233, 199 F.3d 446, 452 (D.C. Cir. 1999)*. On the other hand, a claim of retaliation requires the plaintiff to "show (1) that she engaged in a statutorily protected activity; (2) that the employer took an adverse **[*10]** personnel action; and (3) that a causal connection existed between the two.'" Id. (quoting *Mitchell v. Baldrige, 245 U.S. App. D.C. 60, 759 F.2d 80, 86 (D.C. Cir. 1985))*. In both respects, these are not onerous burdens. *Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)*.

The only question presented in this case with respect to both the discrimination and retaliation claims is whether the plaintiff suffered an adverse employment action. "An adverse employment action' within the meaning of McDonnell Douglass is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Taylor v. Small, 358 U.S. App. D.C. 439, 350 F.3d 1286, 1293 (D.C. Cir. 2003)* (quoting *Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998))*. "To establish an adverse personnel action in the absence of diminution in pay or benefits, [a] plaintiff must show an action with materially adverse consequences affecting the terms, conditions, or privileges of employment.'" *Stewart v. Evans, 348 U.S. App. D.C. 382, 275 F.3d 1126, 1134 (D.C. Cir. 2002)* **[*11]** (quoting *Brody, 199 F.3d at 457*). Indeed, "an employment decision does not rise to the level of an actionable adverse action . . . unless there is a tangible change in the duties or working conditions constituting a material employment disadvantage.'" Id. (quoting *Walker v. WMATA, 102 F. Supp. 2d 24, 29 (D.D.C. 2000))*. It is well-settled in this Circuit "that formal criticism or poor performance evaluations are not necessarily adverse actions." *Brody, 199 F.3d at 458; Broderick v. Donaldson, 338 F. Supp. 2d 30, 42 (D.D.C. 2004); Lester v. Natsios, 290 F. Supp. 2d 11, 28-29 (D.D.C. 2003)*. The Court in Brody

> suggested that performance evaluations should not be considered adverse actions if they did not "affect [] the [employee's] grade or salary," and analogized performance evaluations to lateral transfers, which are not actionable injuries unless they "affect the terms, conditions, or privileges of [an employee's] employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm."

**[*12]**

*Russell v. Principi, 347 U.S. App. D.C. 222, 257 F.3d 815, 818-19 (D.C. Cir. 2001)* (quoting *Brody, 199 F.3d at 457*). Thus, while the Circuit Court has found that a poor performance evaluation is not an adverse employment action, the

Case 1:05-cv-02299-JDB    Document 9-2    Filed 01/24/2006    Page 46 of 48

Page 4
2005 U.S. Dist. LEXIS 36126, *

denial of a bonus, or the award of a lower bonus resulting from the evaluation is an adverse employment action. *Russell, 257 F.3d at 819.*

Here, the plaintiff's complaint contends that she was retaliated against when she received a Level 4 rating on her February 1999 evaluation, as opposed to a Level 5 rating. Compl. P 14. Even assuming that the plaintiff's February 1999 performance evaluation, which was the second highest rating, can be characterized as "poor," the District of Columbia Circuit has clearly held that a poor performance evaluation is not an adverse employment action. *Brody, 199 F.3d at 458;* see also *Broderick, 338 F. Supp. 2d at 42; Lester, 290 F. Supp. 2d at 28-29.* And the plaintiff has not alleged that the February 1999 evaluation had any impact on her employment, her grade, or her salary. In fact, the plaintiff has made no showing that she sustained any **[*13]** objective tangible harm as a result of the 1999 evaluation. n2

n2 The plaintiff attempts to argue that she has suffered tangible harm because "she was denied the opportunity for future promotions because of [this performance evaluation]." Pl.'s Opp'n at 6-7. This argument is completely without merit. In her complaint, the plaintiff merely asserts, in a conclusory fashion, that the defendant's actions have "prevented [her] from receiving additional benefits of her employment, including promotional opportunities to other professional positions, additional professional training and experience, and increased financial pay and benefits." Compl. P 27. This Court, however, may not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint or otherwise offered by the plaintiff. *Kowal, 16 F.3d at 1276.* There has simply been no factual support presented by the plaintiff for this argument as set forth in the complaint. In fact, contrary to the plaintiff's assertions, the defendant notes, and the plaintiff does not represent otherwise, that she has in fact received both a promotion and a raise since her February 1999 evaluation. Def.'s Mem. at 8.

**[*14]**

In the alternative, the plaintiff posits that she has established an adverse employment action by demonstrating that she has been subjected to a hostile work environment. This argument, however, is without any legal or factual support. It is axiomatic that to establish a hostile work environment claim, the plaintiff must demonstrate that the workplace was in fact "hostile." *Stewart, 275 F.3d at 1133.* Under Title VII, an environment "becomes hostile . . . only when [the] offensive conduct permeates [the workplace] with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment'" and create an abusive working environment. *Id.* (citing *Barbour v. Browner, 181 F.3d 1342, 1347-48 (D.C. Cir. 1999)* (quoting *Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998))*; see also *Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295(1993).* When determining whether the alleged harassment rises to this level, courts must consider the totality-of-the-circumstances, including: (1) the frequency of the harassing conduct; (2) its severity; **[*15]** (3) whether it is physically threatening or humiliating; and (4) whether it unreasonably interferes with an employee's work performance. *Harris, 510 U.S. at 23.* This demanding test serves to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Faragher v. City of Boca Raton, 524 U.S. 775 at 788,, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)* (citation omitted).

Here, there is simply no support for a claim that the plaintiff was subjected to a hostile work environment. The only facts alleged in her complaint are that on one occasion her supervisor "began to holler and shout at [her] in a very angry and loud voice," "barred [her] from interacting or conversing" with a coworker (Ms. Bolling), and "angrily pointed or nodded her head" at the plaintiff whenever the plaintiff interacted with Ms. Bolling. Compl. PP 10-12. These allegations are insufficient to demonstrate a hostile work environment for several reasons. First, the alleged harassing conduct was infrequent, only occurring on several occasions, and there is no evidence that it interfered with the plaintiff's ability to perform her job. n3 See **[*16]** *Baloch v. Norton, 355 F. Supp. 2d 246, 260 (D.D.C. 2005)* ("isolated incidents of what one might call a nasty' supervisor and a claim of a hostile work environment where almost one-third of the alleged time-span of that hostile environment lacks actionable activity" is insufficient to support a Title VII claim); *Burton v. Batista, 339 F. Supp. 2d 97, 108 (D.D.C. 2004)* (finding that three allegedly hostile encounters was insufficient to demonstrate a hostile work environment). In addition, the allegations in the complaint are simply not sufficiently sever to constitute a hostile work environment. See, e.g., *Colbert v. Chao, 2001 U.S. Dist. LEXIS 8266, 2001 WL 710114, at *11 (D.D.C. June 19, 2001)* (concluding that the plaintiff's allegations that her current supervisor had become "openly hostile towards her by banging his fists and shouting at her on several occasions" did not demonstrate an adverse action); *Russ v. Van Scoyoc Assocs., Inc., 122 F. Supp. 2d 29, 32 (D.D.C. 2000)* (holding that "it is clear that merely being yelled at by your supervi-

sor does not rise to the level of an adverse employment action"). Thus, it is clear that there is **[*17]** no factual support for the position that the plaintiff suffered an adverse employment action based upon being subjected to a hostile work environment.

n3 The plaintiff states in her opposition that the defendant's harassing conduct included "shuffling of [the] plaintiffs location at work in order to impede her work performance." Pl.'s Opp'n at 6. However, the plaintiff made no factual allegations in her complaint even remotely similar to this unsupported representation in her opposition, and thus it has no bearing on whether the plaintiff has established a prima facie case of her Title VII hostile work environment position.

In the final analysis, construing the facts in the complaint in the light most favorable to the plaintiff, as this Court is required to do, it is clear that the plaintiff, has presented no facts that establish a prima facie case of employment discrimination because she has not demonstrated an adverse employment action. Accordingly, this case cannot survive the defendant's dismissal **[*18]** motion.

**IV. Conclusion**

For the aforementioned reasons, this Court will not dismiss this action pursuant to *Federal Rule of Civil Procedure 12(b)(5)* for failure to properly effectuate service of process. However, this action must nonetheless be dismissed pursuant to *Federal Rule of Civil Procedure 12(b)(6)* because the plaintiff has failed to establish a prima facie case of either employment discrimination or retaliation. Accordingly, the defendant's motion to dismiss is granted.

**SO ORDERED** this day of 3rd day of August, 2005. n4

n4 An Order consistent with the Court's ruling accompanies this Memorandum Opinion.

REGGIE B. WALTON

United States District Judge

**ORDER**

The plaintiff has brought this action alleging a violation of Title VII of the Civil Rights Act of 1964, *42 U.S.C. § 2000e et seq.* Complaint ("Compl.") PP 26-30. Currently before the Court is the defendant's Motion **[*19]** to Dismiss and the plaintiff's opposition thereto. For the reasons set forth in the accompanying Memorandum Opinion, it is hereby this 3rd day of August, 2005

**ORDERED** that the defendant's motion is **GRANTED.** It is further

**ORDERED** that this case is **DISMISSED.**

**SO ORDERED.**

REGGIE B. WALTON

United States District Judge

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** was served by first class U.S. Mail, postage prepaid, this 24th day of January, 2006, on Plaintiff, *pro se*, addressed as follows:

Kareem Ashe
5906 Clay Street, N.E.
Washington, D.C.  20019


_____/s/ Henry A. Platt_____

*BP2554*